In re Albert H. CALDWELL, Debtor.

James E. HARDIN, James C. Hardin and Ralph Majors, Plaintiffs-Appellees, Cross-Appellants,

v.

Albert H. CALDWELL, Defendant-Appellant, Cross-Appellee.

Nos. 87–5577, 87–5578.

United States Court of Appeals, Sixth Circuit.

Argued April 25, 1988.

Decided July 14, 1988.

Wade M. Boswell (argued), Knoxville, Tenn., for defendant-appellant, cross-appellee.

Herbert S. Moncier, Ann C. Short (argued), Knoxville, Tenn., for plaintiffs-appellees, cross-appellants.

Before KRUPANSKY and BOGGS, Circuit Judges, and BROWN, Senior Circuit Judge.

BOGGS, Circuit Judge.

Three unsecured creditors of a debtor in bankruptcy under Chapter 7 of the bankruptcy code obtained a judgment from the bankruptcy court that their debt was nondischargeable under 11 U.S.C. § 523(a)(6).[1] 60 B.R. 214 (Bkrtcy.E.D.Tenn.1986). Less than two months later (and approximately four months after the debtor's bankruptcy had been discharged under Chapter 7, subject to the outcome of the dischargeability proceeding under section 523) the debtor moved to reopen his bankruptcy and to convert it to Chapter 13.

The bankruptcy court allowed the conversion. In considering whether to approve the debtor's plan to repay the unsecured creditors (the only creditors affected by the plan), the bankruptcy court extensively analyzed whether the plan met the requirements for confirmation listed in 11 U.S.C. § 1325. Among the requirements particularly discussed were the debtor's good faith in proposing the plan (1325(a)(3)), whether the unsecured creditors would receive an amount under the plan which is not less than the amount they would receive under a Chapter 7 liquidation (1325(a)(4)), and whether all of the debtor's "projected disposable income" would be used to make payments under the plan (1325(b)(1)(B)).[2] The bankruptcy court, after making findings of fact and conclusions of law, determined that all of the requirements for confirmation were satisfied and confirmed the plan. 67 B.R. 296.

The creditors appealed to the district court. The district court did not conclude that any of the bankruptcy court's findings of fact were clearly erroneous or that any of the bankruptcy court's conclusions of law were incorrect. However, the district court expressed its doubt concerning, *inter alia*, the debtor's motivation in seeking bankruptcy, the debtor's good faith in proposing the plan and the propriety of approving a plan which "did not provide for eventual payment of the entire judgment and interest to the date of the chapter 7 filing." Thus, because of the district court's "impression that the confirmed plan may constitute an abuse of the provisions and purposes of chapter 13," it vacated the bankruptcy court's confirmation of the plan and ordered that the case be remanded to the bankruptcy court for reconsideration.

The debtor then appealed the district court's decision to this court and the creditors cross-appealed in order to preserve their objections to the plan. We conclude that the district court's decision in its present form is unreviewable. Accordingly, we vacate the decision of the district

---

1. 11 U.S.C. § 523(a)(6) states:

 A discharge under ... this title does not discharge an individual debtor from any debt—

 ....

 (6) for willful and malicious injury by the debtor to another entity or to the property of another entity....

2. The relevant subsections of 11 U.S.C. § 1325 provide:

 *Confirmation of plan*

 (a) Except as provided in subsection (b), the court shall confirm a plan if—

 ....

 (3) the plan has been proposed in good faith and not by any means forbidden by law;

 (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;

 ....

 (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

 ....

 (B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

 (2) For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended—

 (A) for the maintenance or support of the debtor or a dependent of the debtor; and

 (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

court and remand to that court for an explicit determination of whether the bankruptcy court's confirmation of the plan is based on clearly erroneous findings of fact, erroneous conclusions of law, or is neither factually nor legally in error.

## I

We summarize briefly the facts attendant to this bankruptcy which most likely prompted the district court's "impression." James E. Hardin, James C. Hardin and Ralph Majors (respectively, father, son, and son-in-law, and collectively referred to as "the judgment creditors") obtained a state court judgment against Albert Caldwell, the debtor, for false arrest, false imprisonment and malicious prosecution. The total amount of the judgment, after the Tennessee Court of Appeals modified the judgment due to Caldwell's financial condition, is $40,000.

The judgment is the result of what became known in Knoxville, Tennessee, as the "Santa Claus Caper." During the 1978 Christmas holidays, Ralph Majors observed a man running away with a plastic Santa Claus which had been on the front porch of the Hardin home. The man later was identified as Larry Caldwell, Albert Caldwell's son.

The judgment creditors chased Larry Caldwell and his accomplice, Robert Campbell. When they caught up with the thieves, an altercation ensued involving a sawed-off shotgun taken from Campbell's automobile and a pistol taken from Larry Caldwell's coat pocket. Although the shotgun went off, no one was injured. After the police arrived at the scene, they found another loaded gun in Larry Caldwell's possession, a spring-loaded switchblade knife on Campbell, and a second shotgun in Campbell's automobile.

Albert Caldwell, Assistant Chief of Police for Knoxville, Tennessee, who arrived on the scene after the struggle, spoke with Majors that night. Caldwell told Majors that he would take care of his son. Four days later, Caldwell had his son, Campbell and another individual, Mark Swaggerty, swear out complaints against the judgment creditors for assault and battery.

Caldwell then personally supervised the arrests of the judgment creditors. However, after a hearing in state court, all charges against the judgment creditors were dropped. (Campbell and Larry Caldwell eventually were indicted by a grand jury, and, after approximately three years of proceedings, entered into a plea agreement with the local district attorney.)

As a result of these events, the judgment creditors sued Caldwell for false arrest, false imprisonment and malicious prosecution. They obtained a judgment in their favor. As already noted, the judgment was modified but substantively affirmed by the Tennessee Court of Appeals. Caldwell applied for permission to appeal to the Tennessee Supreme Court but on August 12, 1985, permission was denied.

Less than two months later, Caldwell filed for bankruptcy under Chapter 7. The only unsecured creditors listed in his debt schedules were the three judgment creditors.

The judgment creditors had their debt deemed nondischargeable under the bankruptcy code. Thus, although Caldwell obtained a discharge under Chapter 7, he still was indebted to the judgment creditors for the full amount of their claim.

Two months after the judgment creditors' debt had been deemed nondischargeable, Caldwell sought to reopen the bankruptcy and to convert the case to Chapter 13. Although the judgment creditors opposed the motion, the bankruptcy court granted it. Caldwell then filed an updated schedule of his income and expenses and a proposed Chapter 13 plan to pay the judgment creditors. The plan proposed that Caldwell would pay to the trustee Caldwell's "projected disposable income" of $400 a month out of his wages for 36 months. Caldwell subsequently modified the plan, proposing that the monthly payment to the trustee be increased to $550 and that any tax refunds he might receive which were attributable to his earnings after conversion of the case to Chapter 13

also would be used to pay the judgment creditors.

The judgment creditors objected to the plan. A confirmation hearing was held on September 11, 1986. Caldwell testified at the hearing that he is 54 years old, in good health, married and has three grown children. His wife is not employed outside the home. He has been employed with the Knoxville Police Department since 1960. His gross monthly salary is $2,889.47 and his take-home pay is $2,177.92 per month. He stated that he does not intend to retire in the near future. He holds a current real estate license.

The bankruptcy court confirmed the modified plan, finding that it met the requirements for confirmation listed in 11 U.S.C. § 1325, including the requirement of section 1325(a)(3) that "the plan has been proposed in good faith and not by any means forbidden by law." Although the bankruptcy court determined that the plan would pay the judgment creditors only about $20,000, approximately half of what they were due, the bankruptcy court calculated that the maximum amount available to the creditors if the estate were liquidated under Chapter 7 would be less than that, and, therefore, 11 U.S.C. § 1325(a)(4) was satisfied.

The judgment creditors appealed to the district court. The district court agreed with the bankruptcy court that Caldwell had the right to have the Chapter 7 discharge revoked and his bankruptcy converted to proceedings under Chapter 13. As already noted, however, the district court stated:

> the Court ... is left with the distinct impression that Mr. Caldwell is not the type of debtor the bankruptcy laws were intended to protect. While he faces a state court judgment in the amount of $40,000, and interest accrued at the time of his chapter 7 filing in the amount of $6,562, Mr. Caldwell is 54 years old, in good health, earning a gross income of approximately $35,000 a year, in possession of a current real estate license, and a tenant by the entirety of a home valued at over $72,000 with an equity estimated

at $71,000. He has no unsecured debts other than this judgment and is in no apparent financial difficulty. He could easily satisfy this judgment by borrowing the money against the equity in his house and insuring the loan to protect his wife from having to pay in the event of his untimely death.

> In addition, it would appear that the $500 value placed on the debtor's right of survivorship in a home with an equity of $71,000 is exceedingly low—although this Court recognizes that the bankruptcy court was dealing with the evidence placed before it.

> The appellants urge this Court to consider whether the plan was proposed in good faith in light of the factors set forth in *In re: Estus*, 695 F.2d 311 (8th Cir.1982). They insist that it consider, among other things, that the debtor misrepresented his debts by claiming his wife's obligations as his own; that he did not initially list his IRA account in his chapter 7 bankruptcy; that he transferred assets to his wife's name before filing in bankruptcy; that all his creditors other than the judgment creditors are to be paid 100% under his plan; and that the debtor's motivation in seeking bankruptcy relief was obviously to avoid paying his judgment creditors.

> All of these factors are of grave concern to this Court as well as its impression that Mr. Caldwell does not need the protection of the bankruptcy laws. This Court would not have approved a plan that did not provide for eventual payment of the entire judgment and interest to the date of the chapter 7 filing. However, an appellate court is not to reweigh the evidence or reverse a finding because it would have decided the case differently. The bankruptcy judge indicated in his opinion that he had "exhaustively" reviewed the circumstances of the case, and the record leaves no doubt that this is true. Nonetheless, because of this Court's impression that the confirmed plan may constitute an abuse of the provisions and purposes of chapter 13, the Court will, and hereby does, VACATE the confirmation and REMAND this ac-

tion to the bankruptcy court for reconsideration consistent with the concerns expressed in this order.

## II

■ In a bankruptcy proceeding, the bankruptcy court is the finder of fact. Although bankruptcy rule 8013 provides that "[o]n an appeal the district court or the bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings," the rule also mandates that "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." The advisory committee's note to rule 8013 states that the rule "conforms the appellate review standard to Rule 52 F.R.Civ. P....." Advisory Committee note to 1987 amendment of B.R. 8013. Moreover,

> [t]his circuit has clearly enunciated that findings of fact of a bankruptcy court should not be disturbed by the district court judge unless there is "most cogent evidence of mistake or miscarriage of justice." *Slodov v. United States*, 552 F.2d 159, 162 (6th Cir.1977) (quoting *McDowell v. John Deere Indus. Equip. Co.*, 461 F.2d 48, 50 (6th Cir.1972), *rev'd on other grounds*, 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978)).

*In re: Edward M. Johnson and Associates, Inc.*, 845 F.2d 1395, 1401 (6th Cir. 1988).

■ Thus an appellate court reviews a bankruptcy court's decision to determine whether its factual findings are clearly erroneous and its legal conclusions, which are subject to *de novo* review on appeal, are correct. *Education Assistance Corp. v. Zellner*, 827 F.2d 1222, 1224 (8th Cir.1987). It is important to bear in mind that when a district court acts as an appellate court, as it does when it reviews a bankruptcy proceeding, the district court is subject to the same limitations which are imposed upon any appellate tribunal. This means that the district court

may not make its own independent factual findings. If the bankruptcy court's factual findings are silent or ambiguous as to an outcome determinative factual question, the district court may not engage in its own factfinding but, instead, must remand the case to the bankruptcy court for the necessary factual determination. *E.g. In re Walker*, 726 F.2d 452, 454–55 (8th Cir.1984); *In re Neis*, 723 F.2d 584, 588–90 (7th Cir.1983).

*Edward M. Johnson and Associates*, 845 F.2d at 1401 (quoting *Wegner v. Grunewaldt*, 821 F.2d 1317, 1320 (8th Cir.1987)).

■ The district court in this case did not exceed its authority by making improper factual findings. Rather, the district court failed to exercise its authority to review the bankruptcy court's decision in an appropriate manner. The district court's decision does not contain any determination that the bankruptcy court's findings of fact are erroneous, or that the bankruptcy court reached incorrect conclusions of law. The district court's "impression" that something may be wrong with the bankruptcy court's confirmation of the plan conveys to us no concrete ruling. We are certain it would not provide the bankruptcy court with any enlightenment as to how it may or may not have erred.

When a fact-finder determines that a ball is red, an appellate tribunal reviewing that decision has various options. If the appellate court determines that the lower court's factual determination of the color of the ball is correct, the appellate court may affirm that the ball is red. If the reviewing court concludes that the record does not support the conclusion that the ball is red, the appellate court may inform the fact-finder that the finding is clearly erroneous, thus reversing the lower court.

The appellate court also could conclude that the lower court committed no factual error, but that legal error is present. Thus, the reviewing court could inform the fact-finder that the color of the ball is irrelevant and remand for a determination of whether the ball is, say, a tennis ball or a baseball, because the relevant disputed

issue is what kind of ball is before the court.

Finally, the appellate court could conclude that the fact-finder committed neither factual nor legal error, or, if legal error is present, that the right result was reached regardless.

What the appellate tribunal may not do is merely tell the fact-finder to "take another look because the ball may or may not be red and what kind of ball it is may or may not be relevant." The fact-finder already has examined the ball closely and has reached a decision. It is then the appellate tribunal's duty to do the same.

■ Here, the tribunal designated to review the bankruptcy court's decision in the first instance, *see* B.R. 8001(a), has not fulfilled its duty to make an explicit determination as to whether the bankruptcy court's confirmation of the Chapter 13 plan is free of legal and factual error. Thus, this tribunal, which provides a second and not primary level of appellate review in these bankruptcy proceedings, must now refrain from reviewing the decision of either the bankruptcy or the district court.

Accordingly, this case must be remanded to the district court for a determination of whether the bankruptcy court's confirmation of the plan is based on clearly erroneous findings of fact, erroneous conclusions of law, or is neither factually nor legally in error. However, before ordering this remand, we note that while we are constrained from reviewing the merits of this appeal, we can provide some guidance to the district court on the state of the law for use upon remand.

The judgment creditors have raised a number of specific objections to the bankruptcy court proceedings, including the decisions to reopen Caldwell's bankruptcy, to convert the bankruptcy to Chapter 13, and to confirm Caldwell's plan to pay the judgment creditors. We express no opinion concerning the merits of any of these objections at this time. However, our review of the proceedings has revealed that the issue most contested (and confused) by the parties, particularly in light of the circumstances which led to the judgment credi-

tors' claim and to Caldwell's filing for bankruptcy, is whether the Chapter 13 plan has been proposed in good faith pursuant to 11 U.S.C. § 1325(a)(3). Consequently, we believe that it is appropriate to provide the district court with some instruction regarding the legal standards which govern the resolution of this particular issue.

## III

■ "A bankruptcy judge's finding that a debtor's plan is proposed in good faith is a finding of fact reviewed under the clearly erroneous standard." *Matter of Metz*, 820 F.2d 1495, 1497 (9th Cir.1987) (collecting cases).

Recently, another panel of this court clarified the analysis required for a determination of a debtor's good faith under 11 U.S.C. § 1325(a)(3). *In Re Okoreeh–Baah*, 836 F.2d 1030 (6th Cir.1988), concluded that "a good faith determination under § 1325(a)(3) requires an inquiry into all the facts and circumstances of a debtor's proposed plan." *Id.* at 1033 (collecting cases). The panel in *Okoreeh–Baah* specifically rejected the contention that when a debtor's pre-plan conduct in incurring a specific debt has been "questionable," 100% repayment on that debt is required. *Okoreeh–Baah*, 836 F.2d at 1031–32. Instead, the panel wrote,

a debtor's pre-petition conduct is but one element in the debtor's total circumstances; the good faith calculus requires the use of discretion by the bankruptcy judge....

Good faith is an amorphous notion, largely defined by factual inquiry. In a good faith analysis, the infinite variety of factors facing any particular debtor must be weighed carefully. We cannot here promulgate any precise formulae or measurements to be deployed in a mechanical good faith equation. The bankruptcy court must ultimately determine whether the debtor's plan, given his or her individual circumstances, satisfies the purposes undergirding Chapter 13: a sincerely-intended repayment of pre-petition debt consistent with the debtor's avail-

able resources. The decision should be left simply to the bankruptcy court's common sense and judgment.

*Okoreeh–Baah,* 836 F.2d at 1033.

Although the panel in *Okoreeh–Baah* stated that it could not "promulgate any precise formulae or measurements to be deployed in a mechanical good faith equation," the court did cite two cases which list specific factors relevant to a good faith analysis, *Matter of Kull,* 12 B.R. 654 (S.D. Ga.1981), *aff'd sub nom. In re Kitchens,* 702 F.2d 885 (11th Cir.1983), and a case cited by the district court in its decision, *In re Estus,* 695 F.2d 311, 316–17 (8th Cir. 1982). *See Okoreeh–Baah,* 836 F.2d at 1032–33. While a comparison of the two lists reveals that they basically are the same, we conclude that the list provided in *In re Estus* is a particularly succinct and clear statement of "some of the factors that a court may find meaningful in making its determination of good faith." *Estus,* 695 F.2d at 317. Accordingly, we quote with approval the *Estus* list:

(1) the amount of the proposed payments and the amount of the debtor's surplus;

(2) the debtor's employment history, ability to earn and likelihood of future increases in income;

(3) the probable or expected duration of the plan;

(4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;

(5) the extent of preferential treatment between classes of creditors;

(6) the extent to which secured claims are modified;

(7) the type of debt sought to be discharged and whether any such debt is nondischargeable in Chapter 7;

(8) the existence of special circumstances such as inordinate medical expenses;

(9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;

(10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and

(11) the burden which the plan's administration would place upon the trustee.

*Estus,* 695 F.2d at 317.[4]

We note that the *Estus* list can be supplemented with the following considerations:

(1) whether the debtor is attempting "to abuse the spirit of the Bankruptcy Code," is a legitimate factor to consider,

*Matter of Chaffin,* 816 F.2d 1070, 1073 (5th Cir.1987);

(2) "good faith does not necessarily require substantial repayment of the unsecured claims,"

*Public Finance Corp. v. Freeman,* 712 F.2d 219, 221 (5th Cir.1983) (citing *In re Goeb,* 675 F.2d 1386 (9th Cir.1982)); *see*

---

**4.** The factors listed in *Kull* are:

(a) the amount of income of the debtor and the debtor's spouse from all sources;

(b) the regular and recurring living expenses for the debtor and his dependents;

(c) the amount of the attorney's fees to be awarded in the case and paid by the debtor;

(d) the probable or expected duration of the Chapter 13 plan;

(e) the motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13;

(f) the ability of the debtor to earn and the likelihood of future increase or diminution of earnings;

(g) special situations such as inordinate medical expense, or unusual care required for any member of the debtor's family;

(h) the frequency with which the debtor has sought relief under any section or title of the Bankruptcy Reform Act or its predecessor's statutes;

(i) the circumstances under which the debtor has contracted his debts and his demonstrated bona fides, or lack of same, in dealing with his creditors;

(j) whether the amount or percentage of payment offered by the particular debtor would operate or be a mockery of honest, hardworking, well-intended debtors who pay a higher percentage of their claims consistent with the purpose and spirit of Chapter 13;

(k) the burden which the administration of the plan would place on the trustee; and

(*l*) the salutary rehabilitative provisions of the Bankruptcy Reform Act of 1978 which are to be construed liberally in favor of the debtor. *Kull,* 12 B.R. at 659.

also Metz, 820 F.2d at 1498–99; Deans v. O'Donnell, 692 F.2d 968 (4th Cir.1982); Barnes v. Whelan, 689 F.2d 193 (D.C.Cir. 1982);

 (3) the fact a debt "is nondischargeable under Chapter 7 does not make it nondischargeable under Chapter 13,"

Education Assistance Corp., 827 F.2d at 1224; and

 (4) the fact that a debtor seeks to discharge an otherwise nondischargeable debt is not, per se, evidence of bad faith but may be considered as part of the totality of the circumstances analysis,

Chaffin, 816 F.2d at 1074.

 We emphasize, however, that no list is exhaustive of all the conceivable factors which could be relevant when analyzing a particular debtor's good faith. It would be impossible to provide such a list and we have not attempted to do so. We also stress that no one factor should be viewed as being a dispositive indication of the debtor's good faith. We agree with the Fifth Circuit that "[t]he 'totality of the circumstances' test means what it says: It exacts an examination of all the facts in order to determine the bona fides of the debtor." Chaffin, 816 F.2d at 1074.

Accordingly, upon remand the district court should examine the bankruptcy court's finding that the plan has been proposed in good faith in light of the discussion provided here. Should it be necessary to do so, the district court also should review and resolve the other objections raised by the judgment creditors.

## IV

For the foregoing reasons, the judgment of the district court is VACATED and the case is REMANDED to that court for further proceedings not inconsistent with this opinion.