In re Jerry E. CARVER, Kaye M. Carver, dba Pet Care of Ohio, Debtor.

Bankruptcy No. 2–89–03319.

United States Bankruptcy Court,
S.D. Ohio, E.D.

Jan. 24, 1990.

Mitchel D. Cohen, Columbus, Ohio, for debtors.

Frank M. Pees, Worthington, Ohio, Chapter 13 Trustee.

OPINION AND ORDER

R. GUY COLE, Jr., Bankruptcy Judge.

### I. *Introduction*

The instant proceeding is before the Court upon an objection to confirmation ("Objection") of the Chapter 13 plan proposed by the debtors, Jerry E. and Kaye M.

Carver ("Debtors"). The Objection was filed by Continental Insurance Company ("Continental") and presented at the November 14, 1989 hearing to consider confirmation of Debtors' plan. The parties were granted thirty (30) days from the date of the confirmation hearing to file post-hearing briefs. Upon the filing of briefs the record was closed and this matter was taken under advisement by the Court.

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this judicial district. This matter is a core proceeding which the Court may hear and determine in accordance with 28 U.S.C. § 157(b)(1), and (2)(L). The following opinion shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule ("B.R.") 7052.

## II. *Statement of Facts*

The Debtor, Kaye M. Carver (hereinafter referred to as "Carver"), was employed approximately eight years as a secretary/office manager for Philip Q. Zauderer ("Zauderer"), a Columbus attorney. Carver's duties as office manager included the writing of checks, the use of a signature machine and the reconciliation of bank accounts.

At an unspecified date in December, 1988, Zauderer discovered large sums of money missing from his business account. After a thorough investigation of the matter, Zauderer determined that Carver was solely responsible for the loss. Zauderer alleges that Carver had instituted an embezzlement scheme under which she converted funds by either marking the check stub "void" and then using the check to pay her own creditors, or recording the check stub in the name of one payee when the actual check was made payable to a different payee in a different amount. Zauderer's testimony was uncontroverted.

Zauderer promptly notified Continental of his loss. Continental had previously issued a fidelity bond to Zauderer which provided coverage for employee dishonesty. The bond's coverage was in effect during the period in which Carver embezzled money from Zauderer. On February 2, 1989, Zauderer submitted a sworn proof of loss to Continental in the amount of $16,210.00. Continental subsequently conducted its own investigation of the claim. Continental approved the claim and on February 13, 1989, paid Zauderer $10,000.00, the penal sum of the bond. In turn, Zauderer executed a release and assignment dated February 13, 1989, thereby assigning to Continental any and all of his rights arising from the loss. Shortly thereafter, Continental notified Carver of its intention to collect from her the amount it had paid to Zauderer.

On December 12, 1988, Zauderer terminated Carver's employment. Due to the loss of income, the Debtors experienced financial difficulties. On June 14, 1989, the Debtors filed a joint petition for relief pursuant to Chapter 13 of the Bankruptcy Reform Act of 1978, as amended ("Bankruptcy Code").

The original bankruptcy petition filed by the Debtors failed to list Continental as a creditor. The terms of the plan proposed to pay a 20% dividend to holders of allowed unsecured claims. On August 22, 1989, a hearing was held by this Court to consider confirmation of the plan. Zauderer objected to confirmation on good faith grounds pursuant to 11 U.S.C. § 1325(a)(3). This Court found Zauderer's objection to be well-taken and denied confirmation. The Debtors were granted an additional thirty days to place the plan in a posture to be confirmed. Because Continental was not originally listed on the Debtors' schedules and, therefore, did not receive notice of the filing of the petition, it was not represented at, or aware of, the August 22 confirmation hearing.

On September 25, 1989, the Debtors submitted an amended plan which proposed to pay Zauderer 100% of the uninsured loss, that being $6,210.00. Further, the Debtors' amended plan increased their monthly payment from $675.00 per month to $700.00 per month, while reducing the dividend to allowed unsecured claimholders from 20% to 10%. Simultaneously, the Debtors amended their unsecured debt

schedule to include Continental as a creditor.[1] The amended plan is anticipated to complete in 57 months.

## III. *Arguments of the Parties*

Continental's objection to the amended plan is premised on Carver's asserted lack of compliance with the provisions of § 1325(a)(3) of the Bankruptcy Code. As assignee of Zauderer's claim, Continental argues it is entitled to assert the same defenses as Zauderer. Continental further posits that in the context of a Chapter 7 proceeding, Carver's debt would be nondischargeable pursuant to § 523(a)(2) and (a)(4). Continental contends it is unjust that a debt which would be nondischargeable in a Chapter 7 proceeding should be discharged in Chapter 13 solely because the Debtors elected to file a Chapter 13 petition. Further, Continental asserts that under the provisions of the plan it will only receive approximately $1,000.00 over the course of the fifty-seven month period, or 10% of its $10,000.00 claim. As such, Continental argues that the Debtors' amended plan clearly illustrates an abuse of the spirit and purpose of the Bankruptcy Code in general, and, more specifically, of the Chapter 13 remedy.

The Debtors, on the other hand, request the Court to embrace a literal reading of § 1328(a), which allows for a "super discharge" of debts.[2] The Debtors assert that injured parties must share with commercial creditors in a Chapter 13 repayment plan if the debtor proposes to pay all of his or her disposable income into the plan. Finally, the Debtors allege that Continental failed to establish, by clear and convincing evidence, that Carver embezzled any of the missing funds; on this ground alone the Debtors contend that Continental's objection is unfounded and, accordingly, should be denied.

1. By letter dated September 5, 1989, counsel for Continental advised the Debtors' counsel of Continental's claim against the bankruptcy estate.

2. 11 U.S.C. § 1328(a) requires the court to grant the debtor a discharge as soon as practicable after the completion of all payments under the plan. The discharge is of all debts except alimo-

## IV. *Preliminary Matters*

■ At the outset, the Court notes that implicit within Chapter 13 is the role of the court in presiding over the confirmation process. As stated in *Matter of Kull*, 12 B.R. 654, 658 (S.D.Ga.1981):

> If confirmation depended entirely upon arithmetical computations or the absence of illegal activity in the case, there would be no need for a judge. Confirmation of a Chapter 13 plan requires the exercise of judicial discretion and assessment of evidence by a bankruptcy judge. The good faith requirement is one of the central, perhaps the most important confirmation finding to be made by the court in any Chapter 13 case. Each case must be judged on its own facts.... Chapter 13 cases must proceed on an individual, subjective consideration of the evidence and circumstances peculiar to each....

Suffice it to say, the bankruptcy court is empowered with the discretion to determine, on a case-by-case basis, whether the debtor has offered to his creditors, through the court, a plan of repayment which satisfies the purpose and spirit of Chapter 13.

## V. *Legal Discussion*

■ In assessing the merits of the case at bar, the parties agree that the Court must determine whether the Debtors have complied with 11 U.S.C. § 1325(a)(3), the so-called "good faith" requirement. Section 1325(a)(3) provides, in pertinent part, as follows:

> (a) Except as provided in subsection (b), the court shall confirm a plan if—
>
> ....
>
> (3) the plan has been proposed in good faith and not by any means forbidden by law.

It is axiomatic that good faith is essential to the confirmation of every Chapter 13 plan. *In re Rose*, 101 B.R. 934 (Bankr.S.D. Ohio 1989); *In re Keffer*, 87 B.R. 509

ny, maintenance, or support, and certain long-term obligations specially provided for under the plan. H. Rept. No. 95–595 to accompany H.R. 8200, 95th Cong., 1st Sess. (1977) pp. 430, 431, U.S.Code Cong. & Admin.News 1978, p. 5787.

(Bankr.S.D.Ohio 1988); *In re Pierce*, 82 B.R. 874, 880 (Bankr.S.D.Ohio 1987); *Matter of Davis*, 68 B.R. 205, 209 (Bankr.S.D. Ohio 1986). The historical meaning of good faith dictates that the proposed plan of reorganization conform with the provisions, purposes, and spirit of Chapter 13.

Although the phrase "good faith", as it appears in § 1325(a)(3), is not defined, the majority of courts have considered several factors in assessing its presence or absence, including whether the plan shows an attempt to abuse the spirit of the Bankruptcy Code. *See Matter of Chaffin*, 816 F.2d 1070, 1073 (5th Cir.1987); *Public Finance Corp. v. Freeman*, 712 F.2d 219, 221 (5th Cir.1983); *Matter of Kull*, 12 B.R. at 658. The courts have been guided by subjective, rather than legislative, considerations in defining the "spirit and purpose" of Chapter 13, even at the expense of the express provisions of the Code. 5 L. King, *Collier on Bankruptcy*, Para. 1325.04[2], 1325–12 (15th Ed.1989). Thus, a determination of good faith is directly related to the purpose and spirit of the endeavor upon which the debtor is about to undertake. Accordingly, the good faith requirement obliges the debtor to commit to the purpose and spirit of Chapter 13; that being rehabilitation and repayment of debt. *Matter of Kull*, 12 B.R. at 658.

Continental asserts that the Debtors' plan has not been proposed in good faith and, therefore, requests this Court to deny confirmation. Relying on *Memphis Bank & Trust Co. v. Whitman*, 692 F.2d 427 (6th Cir.1982) and *Metro Employees Credit Union v. Okoreeh–Baah (In re Okoreeh–Baah)*, 836 F.2d 1030 (6th Cir.1988), Continental urges the Court to find that the Debtors have not satisfied the good-faith calculus, thereby denying the Debtors of their Chapter 13 discharge or, at a minimum, ordering the Debtors to repay 100% of the debt owed to Continental.

The *Memphis Bank* decision involved a debtor whose pre-plan conduct in obtaining a loan (*i.e.*, "puffing" of her income on a loan application) was characterized as "questionable" by the court. In contemplating the effect of questionable pre-plan conduct on confirmation of the plan, the Sixth Circuit concluded: "Another way to deal with the problem when the conduct is questionable but not shown to be dishonest . . . is to require full payment in accordance with the contract." *Memphis Bank*, 692 F.2d at 432. The Sixth Circuit in *Memphis Bank* found that where the conduct is outright dishonest, confirmation of the plan must simply be denied. *Id.* In this instance, Continental argues that the Debtors' conduct rises to the level of dishonesty; thereby compelling the Court to deny confirmation of her plan, or alternatively, requiring full repayment of the debt.

*Memphis Bank*, however, was not the Sixth Circuit's final pronouncement on good faith in the Chapter 13 confirmation process. In response to a perceived misunderstanding of its holding, the Sixth Circuit clarified its ruling in *Memphis Bank* in *Metro Employees Credit Union v. Okoreeh–Baah (In re Okoreeh–Baah)*, 836 F.2d 1030 (6th Cir.1988). In *Okoreeh–Baah*, the debtors obtained a $3,000 loan from a credit union in order to purchase a 1983 Volvo automobile. The debtors previously had borrowed the sum of $8,000 from the same credit union, which perfected its security interest by the notation of its name on the title of a 1981 automobile. In extending the second loan to the debtors, the credit union released the lien on the Oldsmobile and assumed, for whatever reason, that the debtors would independently record the title to the Volvo and ensure that the credit union's lien was noted thereon. The debtors did not record the title to the Volvo. Shortly after obtaining the second loan, the debtors' financial difficulties required them to obtain a bank loan, pledging the same automobile—the Volvo—and other property as collateral. Within six months of the date that the debtors obtained the loan from the bank, they informed the credit union that they had failed to perfect its lien on the Volvo and that, subsequently, they had pledged the automobile as collateral for the bank loan. The debtors filed a Chapter 13 petition approximately four months later.

The bankruptcy court denied confirmation of the debtors' proposed Chapter 13

plan, which provided less than a 100% dividend to holders of allowed unsecured claims. The court's reasoning, affirmed by the district court, interpreted the *Memphis Bank* opinion to mandate two requirements: first, that if a debtor's pre-plan conduct is determined to be questionable, but not dishonest, then a requirement of repayment to the creditor automatically takes effect without evaluation of mitigating circumstances; and second, that the required repayment, once questionable conduct is found, must constitute 100% of the debt, and no less. It was the bankruptcy court's opinion that consideration solely of the debtor's pre-plan conduct, and not his total circumstances, was required by *Memphis Bank.*

In reversing the district court, the Sixth Circuit elaborated on its ruling in *Memphis Bank* and specifically rejected the contention that when a debtor's pre-plan conduct in incurring a specific debt has been "questionable," full repayment on that debt is required. *In re Okoreeh–Baah,* 836 F.2d at 1031–32. Instead the appellate court stated as follows:

> It seems clear that this court did not mean to adopt a rule requiring 100% payment any time "questionable pre-plan conduct" exists, without analyzing any of the debtor's other circumstances. Indeed, if the Sixth Circuit had intended to announce a test using "questionable pre-plan conduct" as its only balancing factor, this court certainly would not have cited *Matter of Kull,* 12 B.R. 654 (S.D.Ga.1981), *aff'd sub nom. In re Kitchens,* 702 F.2d 885 (11th Cir.1983), in support of its position. The *Kull* court held that "good faith" required a subjective analysis of the "totality of the debtor's circumstances," and listed a variety of factors "which the bankruptcy court must consider, but not be limited to"

when decided [sic] whether to confirm a debtor's bankruptcy plan.

. . . .

It is apparent to us that this court in *Memphis* was merely offering possible avenues of recourse to courts dealing with debtors who have engaged in dubious pre-plan conduct.

. . . .

The cases applying the principle set forth in *Memphis* emphasize that a debtor's pre-petition conduct is but one element in the debtor's total circumstances; the good faith calculus requires the use of discretion by the bankruptcy judge.

. . . .

Good faith is an amorphous notion, largely defined by factual inquiry. In a good faith analysis, the infinite variety of factors facing any particular debtor must be weighed carefully. We cannot here promulgate any precise formulae or measurements to be deployed in a mechanical good faith equation. The bankruptcy court must ultimately determine whether the debtor's plan, given his or her individual circumstances, satisfies the purposes undergirding Chapter 13: a sincerely-intended repayment of pre-petition debt consistent with the debtor's available resources. The decision should be left simply to the bankruptcy court's common sense and judgment.

Accordingly, we hold that *Memphis* did not establish a *per se* rule, and that courts should take into account the totality of the circumstances confronting a debtor, not simply his or her pre-plan conduct, when deciding whether or not to confirm a Chapter 13 plan.

836 F.2d at 1032–34 (footnotes omitted).

In espousing a good-faith analysis which looks to the "totality of the debtor's circumstances," the *Okoreeh–Baah* court adopted the twelve-factor inquiry postulated by the bankruptcy court in *Kull.*[3] Sub-

---

**3.** The factors listed include the following:

(1) the amount of income of the debtor and the debtor's spouse from all sources;

(2) the regular and recurring living expenses for the debtor and his dependents;

(3) the amount of the attorney's fees to be awarded in the case and paid by the debtor;

(4) the probable or expected duration of the Chapter 13 plan;

(5) the motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13;

sequently, in *Hardin v. Caldwell (In re Caldwell)*, 851 F.2d 852, 859–60 (6th Cir. 1988), the Sixth Circuit indicated a preference for the list of factors set forth in *In re Estus*, 695 F.2d 311, 316–17 (8th Cir.1982). The court reviewed the two lists presented in *Kull* and *Estus* and concluded that the list provided in *Estus* is a "particularly succinct and clear statement of some of the factors that a court may find meaningful in making its determination of good faith." *In re Caldwell*, 851 F.2d at 859 (quoting *In re Estus*, 695 F.2d at 317). The court quoted with approval the following *Estus* list:

(1) the amount of proposed payments and the amount of the debtor's surplus;

(2) the debtor's employment history, ability to earn and likelihood in future increases in income;

(3) the probable expected duration of the plan;

(4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;

(5) the extent of preferential treatment between classes of creditors;

(6) the extent to which secured claims are modified;

(7) the type of debt sought to be discharged and whether such debt is nondischargeable in Chapter 7;

(8) the existence of special circumstances such as inordinate medical expenses;

(9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;

(10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and

(11) the burden which the plan's administration would place upon the trustee.

Further, the court supplemented that list by enumerating the following four additional considerations:

(1) whether the debtor is attempting to abuse the spirit of the Bankruptcy Code;

*Matter of Chaffin*, 816 F.2d 1070, 1073 (5th Cir.1987).

(2) good faith does not necessarily require substantial repayment of the unsecured claims;

*Public Finance Corp. v. Freeman*, 712 F.2d 219, 221 (5th Cir.1983) (citing *In re Goeb*, 675 F.2d 1386 (9th Cir.1982)); *See also Downey Savings and Loan Assoc. v. Metz (In re Metz)*, 820 F.2d 1495, 1498–99; *Deans v. O'Donnell*, 692 F.2d 968 (4th Cir.1982); *Barnes v. Whelan*, 689 F.2d 193 (D.C.Cir.1982).

(3) the fact a debt is nondischargeable under Chapter 7 does not make it nondischargeable under Chapter 13; and

*Education Assistance Corp. v. Zellner*, 827 F.2d 1222, 1224 (1987).

(4) the fact that a debtor seeks to discharge an otherwise nondischargeable debt is not, *per se*, evidence of bad faith but may be considered as part of the totality of the circumstances analysis.

*Chaffin*, 816 F.2d at 1074.

*Caldwell*, 851 F.2d at 859–60 (quoting *In re Estus*, 695 F.2d 311, 317 (8th Cir.1982)) (citations omitted).

■ As the *Okoreeh–Baah* and *Caldwell* decisions illustrate, a *per se* rule requiring full repayment of obligations arising from

---

(6) the ability of the debtor to earn and the likelihood of future increase or diminution of earnings;

(7) special situations such as inordinate medical expense, or unusual care required for any member of the debtor's family;

(8) the frequency with which the debtor has sought relief under any section or title of the Bankruptcy Reform Act or its predecessor's statutes;

(9) the circumstances under which the debtor has contracted his debts and his demonstrated bona fides, or lack of same, in dealing with his creditors;

(10) whether the amount or percentage of payment offered by the particular debtor would operate or be a mockery of honest, hard-working, well-intended debtors who pay a higher percentage of their claims consistent with the purpose and spirit of Chapter 13;

(11) the burden which the administration of the plan would place on the trustee; and

(12) the salutary rehabilitative provisions of the Bankruptcy Reform Act of 1978 which are to be construed liberally in favor of the debtor.

*Matter of Kull*, 12 B.R. at 659.

questionable or dishonest pre-plan conduct has not been adopted in this Circuit. Rather, a bankruptcy court's good faith analysis must take into account the totality of the circumstances surrounding a debtor's proposed plan. *Okoreeh–Baah*, 836 F.2d at 1033; *Caldwell*, 851 F.2d at 858. This suggests that the court examine all relevant factors to assess the *bona fides* of the debtor. After consideration of these factors, as well as any mitigating circumstances, this Court concludes that the Debtors have not met the good faith requirement of § 1325(a)(3).

██ One factor buttressing this conclusion is that Carver's pre-petition conduct—embezzlement—must be clearly characterized as dishonest. Although the Debtors contend that Continental failed to produce any probative evidence sustaining its burden of proof as to the embezzlement allegations, the Court finds this contention to be wholly without merit. First of all, the present proceeding arises under Chapter 13 of the Code, and is not an adversary proceeding brought pursuant to 11 U.S.C. § 523(a)(4).[4] While a plaintiff in a § 523(a)(4) proceeding must satisfy the clear and convincing burden of proof, this is not the case when there is objection to confirmation premised on § 1325(a)(3). *See generally Matter of Michel*, 74 B.R. 80 (Bankr.N.D.Ohio 1985); *In re Epperson*, 45 B.R. 708 (Bankr.E.D.Tenn.1985); *In re Sutton*, 39 B.R. 390 (Bankr.M.D.Tenn.1984); *In re James*, 42 B.R. 265 (Bankr.W.D.Ky. 1984); *In re Kelly*, 35 B.R. 640 (Bankr.S.D. Fla.1983); *In re Storms*, 28 B.R. 761 (Bankr.E.N.N.C.1983); *Matter of Shuler*, 21 B.R. 643 (Bankr.D. Idaho 1982). In assessing an objection raised under § 1325(a)(3) the court must look at the totality of the circumstances surrounding the debtor's conduct; no requirement exists mandating the objecting party to show by clear and convincing evidence that the debtor's conduct should be characterized as bad faith.

██ Assuming, *arguendo*, that the requisite level of proof was by clear and convincing evidence, this Court finds that Continental sustained its burden. The evidence adduced at trial, through the testimony of Zauderer, clearly established that Carver embezzled monies in the amount of $16,210.00. The Debtors failed to submit any support, evidentiary or otherwise, to the contrary. Further, while the objecting party must meet the initial burden of producing evidence in support of his objection, the debtor bears the ultimate burden of persuasion on the issue of compliance with the confirmation criteria contained in § 1325(a). *See Education Assistance Corp.*, 827 F.2d at 1226; *Matter of Cruz*, 75 B.R. 56, 57 (Bankr.D.P.R.1987); *In re Fries*, 68 B.R. 676, 685 (Bankr.E.D.Pa. 1986). *Cf., In re Mendenhall*, 54 B.R. 44, 45–46 (Bankr.W.D.Ark.1985). Carver has not met this burden. Moreover, based on the record made at the hearing, the Court is left to conclude that Carver's conduct, under the circumstances, was dishonest.

Continental has directed the Court's attention to the third factor enunciated in *Estus*. This factor inquires into the probable duration of the plan. Pursuant to the amendment filed by the Debtors on September 25, 1989, the expected duration of the plan is 57 months. Although the proposed payout of the amended plan is reaching the outer limits of § 1322(c),[5] Continental advances that the plan can still extend for an additional three months. As postulated by Continental, the additional three months would enable the Debtors to pro-

---

**4.** 11 U.S.C. § 523(a)(4) states, as follows:
while
   (a) A discharge under section 727, 1141,[,] 1228[a] 1228(b), or 1328(b) of this title ... does not discharge an individual debtor from any debt
   \*    \*    \*    \*    \*    \*
   (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

**5.** 11 U.S.C. § 1322(c) provides as follows:
   The plan may not provide for payments over a period that is longer than three years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than five years.

vide their creditors with a slightly larger payment.

In response, the Court first notes that an objection premised on this ground is most appropriately brought pursuant to § 1325(b). Due to Continental's failure to raise this objection by motion or at the hearing, the objection is unfounded. The Court, however, will endeavor to elaborate on this issue to clearly illustrate that this objection, had it been properly brought before the Court, is untenable. Section 1325(b)(1) of the Code provides as follows:

If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

Section 1325(b)(1) represents Congress' attempt to resolve statutorily issues relating to the appropriate minimum requirements for funding a Chapter 13 plan from a debtor's post-petition income. *See In re Stein*, 91 B.R. 796, 799–800 (Bankr.S.D.Ohio 1988); *In re Pierce*, 82 B.R. 874, 879 (Bankr.S.D.Ohio 1987); *In re Navarro*, 83 B.R. 348, 354 (Bankr.E.D.Pa.1988); 5 L. King, *Collier on Bankruptcy*, Para. 1325.-08[1], 1325–47 (15th ed. 1989). In accordance with this provision, if a creditor who will not receive full payment under the plan objects to confirmation, the plan may only be confirmed if the debtor proposes to include all his projected disposable income in the plan for a *three-year period.* This Court has previously described § 1325(b)'s so-called "ability-to-pay" test:

Congress responded to the courts' disparate application of the good faith standard—as a means of regulating the amount of payments and the length of Chapter 13 plans—by considering a number of proposals which would have required a good faith effort by a debtor to provide payments to creditors consistent with the debtor's ability, including a so-called "best efforts test." H.R. Doc. No. 1195, 96th Cong., 2d Sess. 24 (1980). Instead, Congress adopted the "ability-to-pay" provisions of § 1325(b), proposed by the National Bankruptcy Conference, which provided that the amount that a debtor could reasonably afford to pay would become both a floor and a ceiling for Chapter 13 plan payments. *Oversight Hearings on Personal Bankruptcy Before the Subcommittee on Monopolies and Commercial Law of the House Committee on the Judiciary,* 97th Cong., 1st Sess. 181–203 (1981–82). It has been commented that:

Through this ability-to-pay test, Congress hoped to create a concrete standard which would both eliminate the disparity between the judicial districts and be consistent with the basic consumer credit theory of extending credit based on future income.

Silver, *The Disposable Income Test: An Attempt Toward Uniformity,* 4 Bankr. Dev.J. 221, 225 (1987) (footnotes omitted).

The ability-to-pay standard of § 1325(b), and the accompanying legislative history, undeniably suggest to the Court that the duration of the plan and/or the percentage of repayment in a Chapter 13 plan are not appropriate considerations when assessing good faith where the plan meets the statutory requirements of § 1325(b). *See In re Easley,* 72 B.R. 948, 955 (Bankr.M.D.Tenn.1987); *In re Red,* 60 B.R. 113, 116 (Bankr.E.D.Tenn.1986). It appears, therefore, that "[a]n independent economic test is not required as a component of 'good faith.'" *In re Pierce,* 82 B.R. at 879 (citing *In re Easley,* 72 B.R. at 955).

Succinctly stated, if the Debtors' plan, upon objection, proposes to pay all of the Debtors' disposable income over a three-year period, then, assuming the other confirmation criteria of § 1325(a) are met, the Debtors are entitled to the relief provided

by Chapter 13, including the broad discharge contained in § 1328(a). *See In re Pierce*, 82 B.R. at 880. While in the instant case the Court finds the Debtors' lacked good faith in proposing their Chapter 13 plan, the Court does not find, as advocated by Continental, that the plan's projected length of fifty-seven months, instead of the statutory maximum of sixty months, evidences bad faith. Realizing that good faith, in its traditional sense, is essential to confirmation of every Chapter 13 plan, this Court is convinced that the bankruptcy court's inquiry into the good faith requirement should be limited to the traditional concept of "serious debtor misconduct or abuse," *In re Gathright*, 67 B.R. 384, 390 (Bankr.E.D.Pa.1986), and whether the debtor has behaved in an equitable fashion in proposing his Chapter 13 plan. *In re Goeb*, 675 F.2d 1386, 1390 (9th Cir.1982); *In re Greer*, 60 B.R. 547, 554 (Bankr.C.D.Cal. 1986). Accordingly, the Court concludes that the objection to confirmation premised on the length of the proposed Chapter 13 plan is without merit.

Another factor establishing the Debtors' lack of good faith, as argued by Continental, is evidenced by the type of debt which is sought to be discharged by the Debtors. *Estus* encourages the Court, among its listed criteria, to consider whether the debt at issue would be adjudicated nondischargeable under Chapter 7 of the Bankruptcy Code. Continental alleges that pursuant to § 523(a)(4), debts arising from embezzlement are clearly excepted from discharge. The Court agrees. By filing a Chapter 13 petition, as opposed to a Chapter 7, the Debtors are attempting to discharge a debt, which is nondischargeable in Chapter 7, by paying only a small amount of the obligation.

■ The Court is left with lingering doubt as to the Debtors' motivation and sincerity in initiating the protection of the Court under Chapter 13; are the Debtors merely seeking Chapter 13 relief to escape the possible consequence facing them in Chapter 7, while repaying a low dividend to holders of allowed unsecured claims? The Court acknowledges that plans proposing less than a 100% dividend do not, in and of themselves, evidence bad faith *per se.* However, viewing the totality of circumstances in this case, it appears to the Court that Carver has not acted with honest intentions in proposing the plan.

The preeminent policy of the bankruptcy system is to "... relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh." *In re Brock*, 47 B.R. 167 (Bankr.S.D.Ca.1985) (quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1933)). That laudable purpose will not be furthered if, in the instant case, the Debtors do not qualify as "honest." Even the hint of manipulation of the Bankruptcy Code raises doubts which go to the heart of the good faith requirement.

Finally, without delving deeply into the issue, the Court will simply note that a recent case of first impression in the Eighth Circuit declined to employ the requirement of good faith to bar discharge of a debt incurred as a result of criminal activity.[6] *See In re LeMaire*, 883 F.2d

6. The facts of *LaMaire* are as follows:

In 1978, the debtor, then a graduate student at the University of Minnesota, shot at his victim nine times with a bolt-action rifle, hitting him five times. Several shots occurred at point blank range. After serving 27 months for aggravated assault, the debtor returned to his school to complete his studies, living at his parents' home. After receiving a Ph.D. in experimental behavior pharmacology, the debtor obtained a research fellowship at the university. The debtor claimed he began paying rent to his parents at this time. However, shortly thereafter, the victim won a civil judgment against the debtor and began garnishment proceedings. The debtor then filed a Chapter 13 petition listing his parents and his victim as creditors and proposed a plan paying his creditors approximately 13.75% of their claims. (The debtor's parents' claim was based on a promissory note signed by the debtor the day before the petition filing, supposedly given in consideration for past loans.) When the district court affirmed the bankruptcy court's confirmation, over his objections, of an amended plan proposing to pay the creditors approximately 42.3%, the victim appealed. He argued that the debtor had not proposed the plan in good faith, that the plan did not include all the debtor's projected disposable income, that the debtor had no regular income and that the debtor's parents'

1373 (8th Cir.1989). In its reasoning, the Eighth Circuit noted although § 523(a)(6) prohibits discharge of a debt for willful and malicious injury by the debtor in a Chapter 7 proceeding, no such provision is contained in Chapter 13. *Id.* at 1376, 19 BCD at 1018. Section 1325(a)(3) does require that a plan be proposed in good faith to be confirmed, but does not define "good faith." The court of appeals reasoned that since a bankruptcy court's determination of a debtor's good faith is a factual finding which the court reviews under a clearly erroneous standard, and the bankruptcy court's determination that the debtor propose his plan in good faith was not clearly erroneous. *Id.* at 1379, 19 BCD at 1020. As such, the Eighth Circuit affirmed the bankruptcy court's conclusion that the proposed plan did not abuse the bankruptcy laws.

While recognizing the rationale employed by the Eighth Circuit, this Court declines to follow that line of reason. Given the Sixth Circuit's "totality-of-the-circumstances" approach, the Court finds that, in light of all the evidence adduced at the hearing, Continental established the Debtors' lack of good faith in formulating their Chapter 13 plan. Specifically, Carver's dishonest pre-petition conduct leads this Court to conclude that the Debtors are not sincere in seeking the relief provided by Chapter 13 of the Bankruptcy Code.

Based upon the foregoing, the objection to confirmation of Continental is hereby SUSTAINED. Specifically, Continental's objection is well-taken to the extent that the objection is grounded upon Carver's dishonest, pre-petition conduct in contravention of 11 U.S.C. § 1325(a)(3).[7] Finally, the Court notes that the evidence presented established that only the debtor-wife engaged in dishonest conduct. The Chapter

13 plan, however, contemplates joint relief under the Bankruptcy Code. As such, the plan must also be denied as to the debtor-husband.

The Debtors are hereby granted twenty (20) days from the date of the entry of this Order to take whatever action they deem appropriate to place their plan in a posture for confirmation. In the event that appropriate action is not taken within the time period specified by this Order, this case shall be dismissed.

IT IS SO ORDERED.

---

claim was either a gift or barred by the statute of limitations or the statute of frauds. The Eighth Circuit affirmed the district court's decision holding that conduct characterized as willful and malicious can be discharged in a Chapter 13 proceeding.

**7.** As an aside, the Court notes that Continental alleges that the Debtors, through counsel, advised Continental that "the plan currently could absorb an additional $4,000.00 in payment with-

out affecting payment to other creditors". (Plaintiff's Post–Hearing Brief at p. 9). In view of the fact that the plan "can tolerate a payment of an additional $4,000", Continental seeks to convince the Court that the Debtors' proposed payment of $1,000.00 evidences bad faith. This Court, however, is restricted by the record made at the hearing. As such, consideration of the allegations presented in the Plaintiff's post-hearing brief will not be entertained by the Court.