**In re SCHEPPS FOOD STORES, INC., Stop N Go Markets of Georgia, Inc., National Convenience Stores Incorporated, Stop N Go Markets of Texas, Inc., Second NCS Realty Company, Third NCS Realty Company, Fourth NCS Realty Company, Sixth NCS Realty Company, Seventh NCS Realty Company, Ninth NCS Realty Company, Eighth NCS Realty Company, Tenth NCS Real-**

---

ty Company, Eleventh NCS Realty Company, Twelfth NCS Realty Company, Thirteenth NCS Realty Company, Kempco Petroleum Company, Hot Stop Foods, Inc., Texas Super Duper Markets, Inc., and Jay's Washaterias, Inc., Debtors.

Bankruptcy Nos. 91–49816–H2–11, 91–49818–H3–11 to 91–49835–H2–11 and 91–49816–H4–11.

United States Bankruptcy Court, S. District of Texas, Houston Division.

June 30, 1994.

Craig J. Litherland and Katherine T. Mize, Sheinfeld, Maley & Kay, Houston, TX, for debtors.

## MEMORANDUM OPINION

WILLIAM R. GREENDYKE, Bankruptcy Judge.

This matter comes before the court on Debtors' Motion for Partial Summary Judgment on the Claim of Cathie Carbajal. Debtors' primary contention on this motion for summary judgment is that several of Carbajal's claims are barred by statutes of limitation. This court, however, lacks jurisdiction to decide the limitations issues presented. Therefore, the motion for partial summary judgment will be denied.

### I.

### *Procedural History*

On June 16, 1992, Claimant, Cathie Carbajal, filed an amended proof of claim (SM & K Claim No. 1363) asserting an unsecured, non-priority claim in an unliquidated amount. The claim is based upon a state court suit that Carbajal filed prior to Debtors' bankruptcy. Debtors objected to the claim on May 7, 1993 (docket no. 4019). Debtors then filed this Motion for Partial Summary Judgment on the Claim of Cathie Carbajal (docket no. 4853) on October 4, 1993, alleging that five of Carbajal's causes of action in the state suit are barred by statutes of limitation. Carbajal filed a response to Debtors' motion on October 18, 1993 (docket no. 4897), and Debtors filed a reply to Claimant's response ("Debtors' Reply") on October 28, 1993 (docket no. 4957).

### II.

### *Facts*

Debtors employed Carbajal in San Antonio, Texas, from March of 1986 through February 8, 1988. Carbajal's claim arises from a lawsuit pending in the 131st Judicial District Court of Bexar County, Texas, styled *Cathie*

*L. Carbajal v. National Convenience Stores,*
No. 90–CI–00916 ("state court action"). Car-
bajal originally filed the state court action on
January 19, 1990. In that action, Carbajal
seeks damages arising from her employment
with Debtors for (1) failure to pay minimum
wage in violation of the Fair Labor Stan-
dards Act, (2) retaliatory firing in violation of
§ 8307 of the Texas Revised Civil Statutes,
(3) negligence, (4) assault and battery, (5)
intentional infliction of emotional distress, (6)
invasion of privacy, and (7) discrimination in
employment due to pregnancy in violation of
42 U.S.C. § 2000e–3(a).

Apparently, Carbajal did not plead five of
the seven causes of action until she filed her
Second Amended Petition on April 24, 1991.
The state court action was eventually set for
trial in January of 1992. On December 9,
1991, however, Debtors petitioned this court
for relief under Chapter 11 of the Bankrupt-
cy Code.

### III.

#### Discussion

Of the five causes of action at issue in
Debtors' motion for summary judgment, only
four are seriously contested by either party:
negligence, assault and battery, intentional
infliction of emotional distress, and invasion
of privacy. Some, if not all, of these claims
clearly involve personal injury and thus in-
voke an exception to this court's jurisdiction-
al power. Title 28 divides the bankruptcy
courts' jurisdiction into two broad categories:
core and non-core proceedings. Core pro-
ceedings may be finally adjudicated by a
bankruptcy judge, but non-core proceedings
are subject to *de novo* review by the District
Court. This court, because of the overlay of
personal injury causes of action, does not
have jurisdiction to decide the state law limi-
tations issues presented by Debtors' motion.

**A. Core Proceedings**

■ 28 U.S.C. § 157 delineates the bank-
ruptcy courts' jurisdiction as follows:

Section 157(b)(1) of Title 28 provides:

Bankruptcy judges may hear and deter-
mine *all core proceedings* arising under
title 11, or arising in a case under title 11,
and may enter appropriate orders and
judgments, subject to review under section
158 of this title.

Section 157(b)(2) defines core proceedings
as including,

(B) allowance and disallowance of claims
against the estate or exemptions from
property of the estate, and estimation of
claims or interests for the purposes of
confirming a plan under chapter 11, 12 or
13 of title 11 *but not the liquidation or
estimation of contingent or unliquidated
personal injury tort or wrongful death
claims against the estate for purposes of
distribution in a case under title 11;*

. . . . .

(O) other proceedings affecting the liqui-
dation of the assets of the estate or the
adjustment of the debtor-creditor or the
equity security holder relationship, *except
personal injury tort or wrongful death
claims.*

28 U.S.C. § 157(b)(1), (2)(B) & (O) (emphasis
added). Therefore, *claims allowance and
disallowance* is a core proceeding, as long as
the liquidation or estimation of personal inju-
ry or wrongful death claims is not involved.

A few courts around the nation have con-
strued the personal injury exclusion in sec-
tion 157(b)(2)(B) in a narrow sense.[1] Those
jurisdictions rely primarily on strict statutory
construction and a literal reading of (b)(2)(B).
For example, the court in *In re Chateaugay
Corp.,* 111 B.R. 67 (Bankr.S.D.N.Y.1990),
*aff'd,* 146 B.R. 339 (S.D.N.Y.1992) held that if
Congress had intended the exclusion in sub-
section (b)(2)(B) to apply to claims allowance

---

**1.** Debtors argue that "it is now beyond dispute
that a bankruptcy court has jurisdiction to enter
summary judgment [as to personal injury claims]
when such claims are legally deficient." Debt-
ors' Reply at p. 5. Debtors, however, fail to
address the issue of how to define a "legally
deficient claim." Foreseeable objections to a
claim based on assault and battery, for example,

could be any number of defenses based on state
law including self defense, defense of others, and
apparent necessity. Surely, Congress did not
intend for bankruptcy courts to try selected de-
fenses in personal injury cases under the guise of
claims objections. *See Pettibone Corp. v. Easley,*
935 F.2d 120 (7th Cir.1991).

and disallowance, it would have placed a comma before the exclusionary phrase. *Id.* at 75. The courts in *Roberts v. Johns–Manville Corp. (In re Johns–Manville Corp.)*, 45 B.R. 823 (S.D.N.Y.1984) and *In re Chateaugay Corp.*, 146 B.R. 339 (S.D.N.Y.1992) held that the personal injury exclusion only applies when liquidating or estimating claims *for purposes of distribution* and thus does not apply to claims allowance and disallowance. *Johns–Manville*, 45 B.R. at 826; *Chateaugay*, 146 B.R. at 343. Finally, the court in *In re Standard Insulations, Inc.*, 138 B.R. 947 (Bankr.W.D.Mo.1992) held that it had jurisdiction to decide the threshold issue of claims allowance in personal injury cases because claims allowance is separate and distinct from liquidation of a claim for purposes of distribution. *Id.* at 951.

In response to those arguments, this court agrees with the court in *In re UNR Industries*, 74 B.R. 146 (N.D.Ill.1987). Neither this court nor the parties can limit the impact of a decision on the limitations issues by fiat. *Id.* at 148. Regardless of the subjective intent of the parties or this court, the effect of a decision on the limitations issues is undeniable; it would be a final adjudication of the merits of Carbajal's state cause of action. Therefore, this court cannot disallow Carbajal's claim based on a state statute of limitations defense because to do so would effectively liquidate the claim for purposes of distribution. By the plain language of section 157(b)(2)(B), a decision on the limitations defense would *not* be a core proceeding.[2]

In order to give effect to all of the provisions of section 157, the section must be read as a whole. *See United Sav. Ass'n v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 371, 108 S.Ct. 626, 630, 98 L.Ed.2d 740 (1988); *Lambright v. United States (In re Lambright)*, 125 B.R. 733 (Bankr.N.D.Tex. 1991). The personal injury exclusion in (b)(2)(B) is just that—an exclusion. If Congress had intended the bankruptcy courts to hear all claims allowance and disallowance issues regardless of their effect on personal injury claims, then why did Congress place an exclusion within that grant of power? To answer to that question, one must look to *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), and section 157(b)(O ) of Title 28.

In *Marathon*, the Supreme Court held that Congress' delegation of power to the bankruptcy courts was unconstitutional and in derogation of Article III of the Constitution. *Marathon*, 458 U.S. at 86, 102 S.Ct. at 2879. The Bankruptcy Amendments of 1984 remedied this constitutional deficiency by creating the core/non-core dichotomy found in Title 28 today. This division is evident in section 157, and subsections (b)(2)(B) and (b)(2)(O ) demonstrate that Congress did *not* want proceedings affecting the liquidation of personal injury or wrongful death claims to be core matters.[3] Thus, bankruptcy courts lack the power to finally adjudicate these causes of action. The legislative history behind section 157 supports this contention. *See* BANKRUPTCY AMENDMENTS AND FEDERAL

---

**2.** On the other hand, however, claims allowance or disallowance based on provisions of the Bankruptcy Code or Rules, such as missing a bar date, would be a core proceeding under section 157(b)(2)(B). Allowance or disallowance based on the bankruptcy provisions alone is clearly distinguishable from state law defenses because the bankruptcy provisions are a product of Congress' regulation of "public rights," whereas state law defenses are state-created "private rights." *See Marathon*, 458 U.S. at 70–71, 102 S.Ct. at 2871. Therefore, although disallowance of a claim for missing a bar date may have the same effect on the claimant's ultimate recovery from the debtor as disallowance on statutes of limitations grounds, bankruptcy courts may decide "bankruptcy issues" with regard to personal

injury and wrongful death claims without exceeding their jurisdictional confines.

**3.** Apparently, early versions of the Bankruptcy Amendments exempted *all* unliquidated and contingent claims from the core jurisdiction of the bankruptcy courts in an effort to comply with *Marathon*. Realizing that this might unduly impede timely administration of bankruptcy cases, Congress limited the exclusion in section 157(b)(2)(B) to personal injury and wrongful death claims. 1 COLLIER ON BANKRUPTCY ¶ 3.01[3][c], at 3–82 (Lawrence P. King ed., 15th ed. 1994). The rationale behind this amendment offered by Senator DeConcini was that personal injury and wrongful death claimants do not voluntarily associate themselves with the debtor, whereas contracting parties do. *Id.* at 3–83.

JUDGESHIP ACT OF 1984, 130 CONG.REC. H7492 (daily ed. June 29, 1984) (statement of Rep. Kastenmeier), *reprinted in* 1984 U.S.C.C.A.N. 579 [herein "130 CONG.REC. H7492"].[4]

## B. *Non-core Proceedings*

■ Since a decision on the limitations issues would not be a core proceeding under section 157, the court now turns to section 157(c)(1). Arguably, a decision on the limitations issues could "relate to a case under title 11" and thereby be considered a non-core proceeding under subsection (c)(1). Although section 157(c)(1) allows bankruptcy judges to hear non-core proceedings, it, like section (b)(2)(B), also should not be read in isolation. Therefore, although § 157(c)(1) provides,

A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11 . . . .,

it must be read in conjunction with 157(b)(5) which provides,

The district court *shall order* that personal injury tort and wrongful death claims *shall be tried* in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

28 U.S.C. § 157(b)(5), (c)(1) (emphasis added).

Since any decision by this court on the limitations issues would be a *de facto* trial on the "state law" merits of Carbajal's claim, that decision would violate the congressional mandate codified in section 157(b)(5).[5] Therefore, the mandate of section 157(b)(5) forecloses the possibility that the liquidation of a personal injury claim could be a non-core proceeding under subsection (c)(1) that is subject to *de novo* review by the District Court.[6]

---

**4.** Representative Kastenmeier commented on the differences between the House and Senate versions of the bill and the ultimate compromise by the conference committee. In his statement, Kastenmeier noted that bankruptcy judges are not to hear wrongful death and personal injury cases to final judgment. He also asserted that under section 157(c)(2), the District Courts could refer those cases to the bankruptcy judge with consent of the parties. According to Representative Kastenmeier, even in that scenario the bankruptcy judge could not enter a final judgment. 130 CONG.REC. H7492.

**5.** The court is aware that some jurisdictions have interpreted section 157(b)(5) somewhat loosely. *See, e.g., Citibank v. White Motor Corp. (In re White Motor Credit)*, 761 F.2d 270 (6th Cir.1985) (holding that personal injury or wrongful death claims could be tried in either the state or federal court in which it is pending). Other courts have applied the section quite literally. *See, e.g., A.H. Robins Co. v. Piccinin (In re A.H. Robins Co.)*, 788 F.2d 994 (4th Cir.) (holding that section 157(b)(5) is a mandatory provision that favors centralization of related bankruptcy litigation), *cert. denied*, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986). This split in authority is easily attributed to the apparent inconsistency between subsections 157(b)(4) and (5) and 28 U.S.C. § 1334(c)(1). The exact construction of 157(b)(5), however, is not requisite to this court's decision. Subsection 157(b)(5) merely stands for the proposition that wrongful death and personal injury cases are not to be tried in bankruptcy courts.

It is also worthy to note that it has historically been this judge's practice to screen for personal injury adversaries and claims objections with an eye towards mediation, remand, or abstention on equitable grounds (as opposed to withdrawal of reference). One of the primary equitable factors the court takes notice of is the crushing criminal docket confronting the U.S. District Court of the Southern District of Texas. In the *Schepps* main case alone, nearly 250 personal injury claims objections have been filed. Thus, in the absence of bankruptcy court intervention and implementation of mediation, permissive abstention, or remand, a literal application of 28 U.S.C. § 157(b)(5) would saddle our district judges with hundreds, if not thousands, of additional civil jury trials, taking into account all bankruptcies within this district. The toll of such a backlog on the District Courts, the litigants, and the timely administration of bankruptcy cases is not a pleasant thought.

**6.** Some legislative history supports the proposition that a bankruptcy court can try personal injury causes of action if properly referred by the District Court under section 157(c)(2). *See, e.g.,* 130 CONG.REC. H7492; BANKRUPTCY AMENDMENTS AND FEDERAL JUDGESHIP ACT OF 1984, 130 CONG.REC. S8889 (daily ed. June 29, 1984) (statement of Sen. Dole), *reprinted in* 1984 U.S.C.C.A.N. 586. That issue, however, is not before the court in this case because there has been no such referral by the District Court.

## IV.

### Conclusion

Though Debtors have filed this motion for summary judgment in conjunction with their claim objection, this court cannot decide issues of state law that finally adjudicate personal injury and wrongful death claims. While section 157 is anything but clear about how to deal with the issues presented herein, this decision reflects this court's attempt to balance the competing interests of *Marathon* with the bankruptcy courts' need (and primary function) to adjudicate issues grounded in bankruptcy law. In accordance with that compromise, this court will continue to adjudicate claims objections but will not consider the merits of an underlying personal injury or wrongful death cause of action in that adjudication. Accordingly, Debtors' motion for summary judgment will be denied by separate form of order, and all further hearings on Debtors' objection to the claim of Cathie Carbajal will be abated until the personal injury liability is determined in a court of competent jurisdiction.

### ORDER DENYING DEBTORS' MOTION FOR SUMMARY JUDGMENT ON THE CLAIM OF CATHIE CARBAJAL (SM & K NO. 1363)

Came on for consideration Debtors' Motion for Summary Judgment (docket no. 4853) on the claim of Cathie Carbajal ("Debtors' SMJ Motion") on June 30, 1994. The court, in accordance with the Memorandum Opinion issued on June 30, 1994, determines that Debtors' SMJ Motion should be denied. It is therefore,

ORDERED that Debtor's Motion for Summary Judgment be and is DENIED; it is further,

ORDERED that the Clerk's Office provide notice of this Order and the Memorandum Opinion referred to above to Debtors, Cathie Carbajal, and their respective attorneys of record.