**In re DOW CORNING CORPORATION, Debtor.**

**Bankruptcy No. 95–20512.**

United States Bankruptcy Court,
E.D. Michigan,
Northern Division.

Dec. 19, 1997.

Barbara J. Houser, Craig J. Litherland, Sheinfeld Maley & Kay, P.C., David M. Bernick, P.C., Kirkland & Ellis, Rozanne M. Giunta, Susan M. Cook, Lambert, Leser, Cook, Giunta & Smith, P.C., for Debtor.

Marvin E. Frankel, Kenneth H. Eckstein, Jeffrey S. Trachtman, Kramer, Levin, Naftalis & Frankel, Lenard M. Parkins, Anne M. Ferazzi, Verner, Liipfert, Bernhard, McPherson and Hand, Chartered, for Official Committee of Tort Claimants.

H. Jeffrey Schwartz, Gregory G. Binford, Jeffrey M. Levinson, Benesch, Friedlander, Coplan & Aronoff, L.L.P., Randall L. Frank, for Official Physicians' Committee.

Donald S. Bernstein, Ogden N. Lewis, Lowell Gordon Harriss, Davis Polk & Wardwell, Sheldon S. Toll, Sheryl L. Toby, Honigman Miller Schwartz & Cohn, for Official Committee of Unsecured Creditors.

Dennis S. Meir, Alfred S. Lurey, Kilpatrick Stockton, L.L.P., for Official Committee of Tort Claimants.

R. Mike Borland, Vi Lea Borland, Borland & Borland, Robert J. Rhead, P.C., for a Group of 86 Silicone Personal Injury Claimants.

Linda C. Scheuerman, Jaffe, Raitt, Heuer & Weiss, for Blue Cross and Blue Shield of Alabama, Michigan and Minnesota and Blue Shield of California.

D'Juana Parks, Provost* Umphrey Law Firm L.L.P., for a Group of 347 Claimants.

## SUPPLEMENTAL OPINION ON DEBTOR'S MOTION FOR SUMMARY JUDGMENT ON OMNIBUS DISEASE CLAIM OBJECTION

ARTHUR J. SPECTOR, Bankruptcy Judge.

In our last opinion, the Court held that a bankruptcy court is empowered to grant summary judgment disallowing personal injury claims pending against a debtor. *In re Dow Corning Corp.*, 215 B.R. 346 (Bankr.E.D.Mich.1997). In this opinion, we recommend that, pursuant to 28 U.S.C. § 157(d), the District Court withdraw the reference to this Court solely with respect to the Debtor's omnibus objection to those claims and its motion for summary judgment thereon.

The central issue in this case is whether silicone gel manufactured by the Debtor and used in breast implants that it and other companies manufactured caused systemic illnesses to those who had the devices implanted into their bodies. The centrality of this issue leads the Debtor to make this argument:

> This Court's experience in this case, familiarity with the issues, and the critical links between causation and any assessment of a plan of reorganization all argue in favor of having this Court hear Dow Corning's motion. . . .
>
> This Court is the central forum for dispute resolutions in this case. This Court has and will oversee the negotiation and confirmation of a feasible chapter 11 plan. This Court will ultimately have to decide whether Dow Corning may emerge from chapter 11 and under what conditions. This Court has already heard days of testimony and countless hours of oral argument relating to the parties' position on these issues. This Court has developed a substantial amount of learning on the issues. . . .

This Court's role, though limited for certain purposes, is still central to the case and cannot reasonably be disputed when it comes to such fundamental bankruptcy practices as the disallowance of unmeritorious claims.

Debtor's Reply Brief in Support of Its Motion at 4–5.

The Official Committee of Tort Claimants ("TCC"), joined by the two other official committees and various individual creditors, argue that the District Court should decide the motion. For the following reasons, we agree with the creditors.

The Court of Appeals has clearly expressed a preference for expeditious handling of the many personal injury claims arising not only *in* this case, but also arising *out of* it. *See In re Dow Corning Corp.*, 113 F.3d 565, 569 (6 th Cir.1997). Falling under the latter category are the thousands of personal injury claims against one of the Debtor's shareholders, the Dow Chemical Company. The validity of those claims, which are currently pending in the District Court, largely depends upon a finding that the Debtor's products caused harm. And critical to the decision on that issue is whether the claimants' expert witnesses will be permitted to testify. It therefore seems wasteful for two judicial officers within the same district to preside over and rule (perhaps differently) on this fundamental question.

Appellate considerations also counsel against this Court deciding the Debtor's motion. The TCC asserts that summary judgment rulings are subject to de novo review. TCC's Response at 6. Thus, the TCC argues that it would make little sense for this Court to engage in a lengthy and expensive *Daubert*[1] hearing when on appeal the whole issue would likely be retried from scratch. *Id.* Conversely, the Debtor asserts "that *Daubert* determinations are reviewed for an abuse of discretion. . . ." Debtor's Reply Brief at 3–4 n. 3 (citing *United States v. Jones,* 107 F.3d 1147, 1152 (6 th Cir.), *cert. denied,* — U.S. —, 117 S.Ct. 2527, 138 L.Ed.2d 1027 (1997)). Since this issue was

---

1. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

first briefed, the Supreme Court has vindicated the Debtor's viewpoint.

■■■ The TCC is correct that normally, appellate review of a trial court's grant of summary judgment is de novo. *Doe v. Claiborne County,* 103 F.3d 495, 505 (6th Cir. 1996). However, as the Supreme Court clarified in a unanimous decision Monday, when the summary judgment is predicated upon a *Daubert* exclusion of the respondent's expert testimony, the applicable standard of review is abuse of discretion. *General Electric Co. v. Joiner,* —— U.S. ——, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997).

What cannot be overlooked, however, is the possibility that a *Daubert* challenge to the plaintiffs' scientific evidence may also be filed in the consolidated actions pending against Dow Chemical in the District Court before Judge Denise Page Hood. The Debtor and Dow Chemical advise us that there is very little chance that the admissibility of the plaintiffs' expert witnesses' testimony will be an issue there any time soon. They insist that the issue will be decided in this bankruptcy case long before it is raised in the consolidated Dow Chemical cases.[2] But the timing for hearing this motion is not so easily discerned. The Debtor's motion was filed eight months ago and the parties still do not know even where the motion will be heard. The TCC wants to take more discovery. Moreover, if the motion is heard here, all sides urge us to consider the results of the F.R.E. 706 science panel convened by Judge Pointer in the Breast Implant M.D.L. That panel has been working for months and the end of its process is not clearly in sight. Therefore, the Debtor's and Dow Chemical's scheduling assurances cannot be accepted as gospel. And if they are wrong, think how strange it would appear if two contemporaneous (or nearly contemporaneous) *Daubert* motions on the very same issue were conducted within the same district court.

The potential outcome of such a scenario could be quite unpleasant. Conceivably, this Court could grant the Debtor's motion after finding the claimants' scientific evidence lacking under *Daubert* while Judge Hood could reach the opposite conclusion in the course of the Dow Chemical cases. Judge Hood could affirm this Court's ruling as not being an abuse of discretion. The whole mess would then wind up in Cincinnati, where the Court of Appeals could potentially affirm both trial level decisions because neither was an abuse of discretion. The outcome of such a scenario would justifiably make a laughing stock of the system of justice that allowed it to happen.

Another uncomfortable circumstance is possible if this Court were to decide that the claimants' evidence does not satisfy the *Daubert* standards. In reviewing the record on appeal, Judge Hood could harbor a firm conviction that she would have decided the motion differently, but nevertheless decide that this Court had not abused its discretion. Because an appellate court cannot substitute its own judgment for that of the trial court's under such circumstances, this Court's decision would have to be affirmed. The resulting affirmance could theoretically estop the claimants in the Dow Chemical cases should a *Daubert* issue arise there at a later time. This is because all of the plaintiffs in the Dow Chemical cases are also creditors whose claims are the subject of the Debtor's objection in this Court, and the issue is the same.

The converse is also possible. Dow Chemical, which is an actual or virtual party to the Debtor's motion here (or at least may be considered in privity with the Debtor), could likewise be estopped from raising the same issue in its own cases if this Court's ruling is adverse to the Debtor. We hasten to add that we do not suggest that either of these scenarios is mandated or even likely.[3] We only note that these scenarios will never be

---

2. Dow Chemical does not have unfettered discretion about when to raise the *Daubert* issue. Under F.R.Civ.P. 16(b)(2), a court may fix deadlines for the filing of motions. Presumably, Judge Hood could fix an early deadline which corresponds with the hearing of the Debtor's motion for summary judgment.

3. However, at oral argument, no party expressed any doubt about such an outcome. Nor do we suggest that such an outcome—precluding relitigation of the issue in the Dow Chemical cases—is a good or a bad thing.

possible if this Court does not decide the Debtor's motion for summary judgment.

Furthermore, if this Court denied the Debtor's motion, then the omnibus objection to the disease claims would be tried in the District Court. 28 U.S.C. § 157(b)(5). If the District Court accepted the Debtor's interlocutory appeal of this Court's denial of the motion for summary judgment, another anomaly could result. Presumably, Judge Hood could determine that this Court had not abused its discretion in denying the Debtor's motion, yet believe that she would have decided the matter differently in the first instance. Once again, the task of the appellate court under such circumstances is not to substitute its view for the trial court's view. Consequently, this Court's summary judgment denial would have to stand. In the context of the resulting trial, however, Judge Hood would then be presented with two equally unsatisfactory options. She could sublimate her own conviction that the claimants' experts should not be allowed to testify. Little good can be said about a procedural posture which permits decisions from a lower level judicial officer to constrain a district judge from conducting the proceedings in her courtroom as she thinks best. Alternatively, notwithstanding the affirmance, Judge Hood could nevertheless preclude the witnesses from testifying at trial. This option would be logically inconsistent with the result of the prior determination and might even be reversible error.

In summary, the bizarre personal injury jurisdictional provisions of the Judicial Code creates a very peculiar procedural relationship between the district and bankruptcy courts. This relationship potentially puts a district judge into a position of internal conflict due to her dual roles as both a trial court and appellate court in the same bankruptcy case. The best way to prevent such conflict is for the issue to bypass the bankruptcy judge altogether, leaving the district court as solely a trial court.

If this Court were to conduct the proceedings on the Debtor's summary judgment motion and to grant the motion, one of the issues on appeal would undoubtedly include whether the motion was a core proceeding which this Court was empowered to decide. If the ultimate decision (after one, two, or possibly three appeals) is that it was not a core proceeding, it could very well require that the proceedings be repeated from scratch. See F.R.Bankr.P. 9033(d) ("The district judge shall make a de novo review upon the record or, after additional evidence, of any portion of the bankruptcy judge's findings of fact or conclusions of law to which a specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the proposed findings of fact or conclusions of law, receive further evidence, or recommit the matter to the bankruptcy judge with instructions."). Furthermore, at least one court has stated that it is outside of a bankruptcy court's power to issue even a report and recommendation with respect to a motion like the Debtor's. *In re Schepps Food Stores, Inc.*, 169 B.R. 374, 378 (Bankr.S.D.Tex.1994); *see also* 1 *Norton Bankruptcy Law & Practice 2d* § 4:24 at 4–176 to 4–179. Therefore, if the District Court were the initial court to hear the summary judgment motion, including the *Daubert* proceedings, it would remove not only one layer of appeal, but one issue on appeal as well.

By withdrawing the reference as to the objection and the connected motion, the District Court will have abided by the spirit of the Sixth Circuit's pronouncements concerning the consolidation of all systemic disease related proceedings before the District Court judge, and will avoid even the possibility of creating the intolerable spectacles and conflicts hypothesized in this Opinion.

Judicial expertise with respect to *Daubert* hearings is yet another factor to consider. While the Debtor has expressed great confidence in this Court's ability to grasp and dispose of the issues under *Daubert*, we agree with the countervailing contention that the District Court has far greater expertise in handling such matters. The TCC correctly reminds us that in our July 29th opinion, *In re Dow Corning Corp.*, 211 B.R. 545, 561 (Bankr.E.D.Mich.1997), this Court stated that "a district judge is much better qualified to preside over a complex product liability jury trial than a bankruptcy judge lacking

any comparable experience." The Debtor has not asked this Court to conduct the trial of a personal injury claim. Instead, it has asked us to determine whether the claimants' experts are qualified to give their opinion on an issue of critical importance to their case. Nevertheless, the Court's reasoning of July 29th is applicable in this context as well. While a bankruptcy judge may occasionally need to apply *Daubert* during the trial of a non-personal injury claim or adversary proceeding, it is safe to say that the issue is one which rarely arises in bankruptcy court. This judge has never had the issue. Considering that there are perhaps hundreds of thousands of claims potentially worth billions of dollars riding on the determination, this is no time for a novice. Between them, the other judicial officers assigned responsibility for this case and related proceedings have presided over dozens of *Daubert* motions, giving them far greater expertise than this Court possesses. Given the immense stakes, the experience factor points strongly toward withdrawal of the reference.[4]

In summary, judicial economy and other prudential considerations strongly point to the conclusion that the proper way to proceed here is for the District Court to withdraw the reference to this Court with regard to the Debtor's omnibus objection to disease claims and the motion for summary judgment thereon.

A separate report recommending this result has been entered contemporaneously herewith.

---

4. By analogy, patients are well advised to have surgical procedures performed at institutions that perform them frequently. Though every surgeon who has done hundreds of heart bypass procedures had to have had a first, it is likely that the first one was uncomplicated and did not involve multiple bypasses. The novice was probably guided through her first procedure by far more experienced colleagues. The patient may not have known that he or she would be the surgeon's first. And for all of these reasons, a surgeon's first patient to undergo the procedure is most assuredly not a V.I.P. This Court presiding over a *Daubert* hearing in this case is like a heart surgeon performing her first quadruple bypass on a high-risk V.I.P. patient without back-up.