ELECTRONIC CITATION:  2002 FED App. 0001P (6th Cir.)
File Name:  02b0001p.06

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

| | |
|---|---|
| In re:  FRANK FRANCIS, | ) |
| | ) |
| Debtor. | ) |
| _____ | ) |
| | ) |
| ED SCHORY & SONS, INC., | ) |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | )  No. 01-8033 |
| | ) |
| FRANK FRANCIS, | ) |
| | ) |
| Defendant-Appellee. | ) |
| _____ | ) |

Appeal from the United States Bankruptcy Court
for the Northern District of Ohio, at Canton.
No. 00-63750.

Argued: September 5, 2001

Decided and Filed:  February 7, 2002

Before: AUG, BROWN, and RHODES, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ARGUED:**  R. Clint Zollinger, Jr., North Canton, Ohio, for Appellant.  Donald M. Miller, Canton, Ohio, for Appellee.  **ON BRIEF:**  R. Clint Zollinger, Jr., Christopher J. Freeman, North Canton, Ohio, for Appellant.  Donald M. Miller, Canton, Ohio, for Appellee.

_____

**OPINION**

_____


J. VINCENT AUG, JR., Bankruptcy Appellate Panel Judge.  Appellant, Ed Schory & Sons, Inc. ("Schory") appeals the bankruptcy court's order confirming the chapter 13 plan filed by Frank Francis ("Francis" or "Debtor").  Schory contends that the bankruptcy court erred in confirming Debtor's plan because the plan was not filed in good faith.  Because we find that the bankruptcy court's findings of fact on the issue of good faith were not clearly erroneous, we **AFFIRM**.


## I.    ISSUES ON APPEAL

Whether the bankruptcy court erred in finding that Debtor proposed his chapter 13 plan in good faith and whether the bankruptcy court erred in confirming Debtor's plan.


## II.    JURISDICTION AND STANDARD OF REVIEW

The Panel has jurisdiction over appeals from the final orders of bankruptcy courts in the Northern District of Ohio pursuant to 28 U.S.C. § 158(a)(1) and that district has authorized appeals to the Panel.  The order of the bankruptcy court confirming the Debtor's plan is a final order for purposes of appeal.  *See First Union Mortgage Corp. v. Eubanks (In re Eubanks)*, 219 B.R. 468, 469 (B.A.P. 6th Cir. 1998).

"'A bankruptcy judge's finding that a debtor's plan is proposed in good faith is a finding of fact reviewed under the clearly erroneous standard.'"  *Hardin v. Caldwell (In re Caldwell)*, 851 F.2d 852, 858 (6th Cir. 1988) [hereinafter *"Caldwell I"*] (quoting *Downey Savings & Loan Assoc. v. Metz (In re Metz)*, 820 F.2d 1495, 1497 (9th Cir. 1987)); *see also Mason v. Young (In re Young)*, 237 F.3d 1168, 1172 (10th Cir. 2001) (The court "review[s] for clear error the bankruptcy court's factual determination that [Debtor's] Chapter 13 plan was proposed in good faith.").  Factual determinations are clearly erroneous "if we are left with the definite and firm conviction that a mistake has been committed."  *Tennessee Student Assistance Corp. v. Hornsby (In re Hornsby)*, 144 F.3d 433, 436 (6th Cir. 1998) (internal quotations and citations omitted); *see also* FED. R. BANKR. P. 8013 ("Findings of

fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.").

### III. FACTS

This is the second trip these parties have made to this Panel. The details of the partnership relationship between Francis and Schory are set forth in our prior opinion. *Ed Schory & Sons, Inc. v. Francis (In re Francis)*, 226 B.R. 385, 387-88 (B.A.P. 6th Cir. 1998). For purposes of this appeal, suffice it to say that in a prior chapter 7, the bankruptcy court determined that a debt owed by Francis to Schory was nondischargeable. On November 10, 1998, the Panel affirmed the findings of the bankruptcy court that the debt owed to Schory by Francis was nondischargeable in the chapter 7 filed by Francis.

Approximately two years later, on November 6, 2000, Francis filed the chapter 13 petition and plan that are the subject of the current appeal before the Panel. On January 11, 2001, Schory filed an objection to confirmation of the plan. The main thrust of the objection was that the debt owed to Schory had been found nondischargeable in the prior chapter 7 filed by Francis in 1997 and Francis's plan proposed to pay a minimal amount to unsecured creditors.[1]

In determining that Francis's chapter 13 plan should be confirmed, the bankruptcy court stated that the test to be applied is "a form of the Caldwell Totality of the Circumstances Test." (App. of Appellant at 250.) Although it did not state with specificity the elements of the Caldwell Totality of the Circumstances Test, the bankruptcy court performed a very thorough analysis of the circumstances surrounding Francis's filing. The bankruptcy court noted the following factors on the negative side of confirmation:

(1) Francis's prior chapter 7 proceeding and his failure to list the prior chapter 7 in his chapter 13 petition and schedules;

(2) The fact that the debt to Schory was nondischargeable in the prior chapter 7;

---

[1]At oral argument, the parties stipulated that the plan percentage is two to three percent and that the bankruptcy judge was aware of the low percentage. It is evident from the trial transcript and the bankruptcy court's oral decision that the low percentage was of concern to the bankruptcy court and that the Debtor's plan received particular scrutiny due to the low percentage. (App. of Appellant at 236.)

(3)     Failure of Francis to file all of his tax returns;

(4)     Failure to list the Internal Revenue Service as a creditor in his chapter 13;

(5)     The low payment percentage to unsecured creditors in the chapter 13; and

(6)     Francis's schedules and statements of affairs "were not of the highest caliber."

(App. of Appellant at 251.)

On the positive side of confirmation, the bankruptcy court noted:

(1)     It has been three and a half years since the filing of Francis's chapter 7 petition;

(2)     The debt owed to Schory is substantial (approximately $229,000) and Francis has made substantial payments on the debt of approximately $43,000;[2]

(3)     Francis has maintained a fairly steady income and growth over the past several years;

(4)     Francis has committed to the maximum five-year plan at the age of 55;

(5)     Francis is contributing all available money to his plan including obtaining contributions from relatives;

(6)     After intense scrutiny, the bankruptcy court was satisfied with the current accuracy of Francis's financial statements as to assets and income and that Francis has virtually no assets;

(7)     There is no unusual burden on the chapter 13 trustee in administering Francis's chapter 13 plan; and

(8)     Given his age and the interest accruing on the debt owed to Schory, it is hopeless that Francis will ever be able to pay off the debt in full.

---

[2]Approximately $900 of the $43,000 was paid when Schory levied on all of Francis's household furniture. (App. of Appellant at 168-70.) Francis testified that a larger portion of the $43,000 was paid to Schory when Francis sold several condos. Francis paid Schory $2,000 each on the sale of four condos and made a "seventeen (17) or an eighteen thousand dollar ($18,000) payment that was every penny made off of another two condos that sold. Other than what the bank got, we sent everything over to Schory; anything to pay the note down." (App. of Appellant at 166, 168.)

The bankruptcy court also considered that Francis apparently received poor legal advice in the past. It has been 14 years since Francis's downward spiral started and in recent years Francis has made a substantial effort to put his life back together.[3]

The bankruptcy court confirmed Francis's plan in an oral decision supplemented by an order confirming the plan entered April 11, 2001. Schory filed this timely appeal.

**DISCUSSION**

Pursuant to 11 U.S.C. § 1325(a)(3), a debtor's plan cannot be confirmed unless it is proposed in good faith, and the debtor bears the burden of proving his good faith. *See Hardin v. Caldwell (In re Caldwell)*, 895 F.2d 1123, 1126 (6th Cir. 1990) [hereinafter "*Caldwell II*"].

Schory argues that Francis has not proposed his plan in good faith and indeed one's initial reaction is to question the good faith of a debtor who proposes a plan paying two to three percent of a $229,000 nondischargeable debt. However, these facts alone do not force a conclusion that Debtor's plan was filed in bad faith. The rule in the Sixth Circuit is that plans proposing to pay such low percentages of nondischargeable debts deserve "particular scrutiny". *Caldwell II*, 895 F.2d at 1126. That is exactly the action taken by the bankruptcy court in this matter.

Schory also asserts that Francis's plan was not filed in good faith because of Francis's failure to list the Internal Revenue Service as a creditor, his failure to disclose the prior chapter 7, and inaccuracies in the Debtor's scheduled assets and income. The bankruptcy court looked at each of these issues in detail.

*Criteria to Determine Good Faith*

The Sixth Circuit has indicated that "'a debtor's pre-petition conduct is but one element'" and that bankruptcy courts must look to the totality of the circumstances in

---

[3]In its oral decision, the bankruptcy court also notes when discussing the favorable considerations that "[t]here is a preferential treatment between the classes in the plan." (App. of Appellant at 252.) This appears to be a typographical error or a misstatement by the bankruptcy judge since there was no evidence given or assertion made by Schory that any creditors were receiving preferential treatment. Presumably, the bankruptcy court intended to indicate as a favorable consideration that there was **not** any preferential treatment between classes in the plan.

determining a debtor's good faith in filing a chapter 13 petition and plan. *Caldwell I*, 851 F.2d at 860 (quoting *Metro Employees Credit Union v. Okoreeh-Baah (In re Okoreeh-baah)*, 836 F.2d 1030, 1033 (6th Cir. 1988)). The Sixth Circuit "has suggested a twelve-part test to determine whether a debtor's Chapter 13 plan is proposed in good faith." *Caldwell II*, 895 F.2d at 1126. Those criteria are:

(1) the amount of the proposed payments and the amount of the debtor's surplus;

(2) the debtor's employment history, ability to earn and likelihood of future increase in income;

(3) the probable or expected duration of the plan;

(4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;

(5) the extent of preferential treatment between classes of creditors;

(6) the extent to which secured claims are modified;

(7) the type of debt sought to be discharged and whether any such debt is nondischargeable in Chapter 7;

(8) the existence of special circumstances such as inordinate medical expenses;

(9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;

(10) the motivation and sincerity of the debtor in seeking Chapter 13 relief;

(11) the burden which the plan's administration would place upon the trustee; and,

(12) whether the debtor is attempting to abuse the spirit of the Bankruptcy Code.

*Id.* at 1126-27; *see Okoreeh-Baah*, 836 F.2d at 1032; *Georgia R.R. Bank & Trust Co. v. Kull (In re Kull)*, 12 B.R. 654, 659 (S.D. Ga. 1981), *aff'd sub nom. Kitchens v. Georgia R.R. Bank & Trust Co. (In re Kitchens)*, 702 F.2d 885 (11th Cir. 1983).

The above factors can be supplemented with additional considerations:

(1)   whether the debtor is attempting to abuse the spirit of the Bankruptcy Code;

(2)   [that] good faith does not necessarily require substantial repayment of the unsecured claims;

(3)   [that] the fact a debt is nondischargeable under Chapter 7 does not make it nondischargeable under Chapter 13; and

(4)   the fact that a debtor seeks to discharge an otherwise nondischargeable debt is not, *per se*, evidence of bad faith but may be considered as part of the totality of the circumstances analysis.

*Caldwell I*, 851 F.2d at 859-60 (internal quotations and citations omitted).

The Sixth Circuit has stated that bankruptcy courts should not approve chapter 13 plans that are nothing more than "veiled" chapter 7 plans. *Caldwell II*, 895 F.2d at 1126. A "veiled" chapter 7 plan has not been defined. However, the concept has not yet evolved into anything beyond a chapter 13 petition and plan that does not meet the good faith requirements set forth in *Okoreeh-Baah*. *See Caldwell II*, 895 F.2d 1123 (first using the phrase "veiled chapter 7 plan" to describe a chapter 13 plan which failed to meet the good faith requirements set forth in *Okoreeh-Baah*).

More instructive and more in line with determining whether this Debtor's plan should have been confirmed, is the Sixth Circuit's direction that a chapter 13 plan which proposes to pay only a small portion of a debt that could not be discharged in a chapter 7 deserves particular scrutiny. *Caldwell II*, 895 F.2d at 1126.

> The bankruptcy court must ultimately determine whether the debtor's plan, given his or her individual circumstances, satisfies the purposes undergirding Chapter 13: a sincerely-intended repayment of pre-petition debt consistent with the debtor's available resources. The decision should be left simply to the bankruptcy court's common sense and judgment.

*Okoreeh-Baah*, 836 F.2d at 1033.

Consistent with its duty to give particular scrutiny to Francis's plan, the bankruptcy court in the case before the Panel thoroughly considered each of the issues raised by Schory as well as the other factors given by the Sixth Circuit in *Okoreeh-Baah*.

Low Percentage Plan and Chapter 13 Discharge of the Nondischargeable Debt owed to Schory

The bankruptcy court was particularly concerned with the low percentage Francis's plan proposed to pay and with his chapter 13 plan discharging Schory's debt when the debt was nondischargeable in the prior chapter 7.

The plain language of 11 U.S.C. § 1325(a)(4) sets the minimum dividend payable by a chapter 13 debtor and § 1322(a)(1) requires that all of a debtor's disposable income be paid into the plan for a three-year period. 11 U.S.C. § 1328 provides for a superdischarge for chapter 13 debtors by permitting discharge of some debts that would be nondischargeable in a chapter 7. *See Keach v. Boyajian (In re Keach)*, 243 B.R. 851, 871 (B.A.P. 1st Cir. 2000). "There is, however, a *quid pro quo* for the expanded discharge

available under Chapter 13. The debtor must devote all his projected disposable income for three years to the plan's payments." *Id.* at 857.

There was no question for the bankruptcy court that Francis's plan, on its face, met the requirements of § 1325(a)(4).[4] However, due to the circumstances surrounding Francis's plan, the bankruptcy court was required to, and did, further scrutinize Francis's financial situation to determine if Schory's allegations that Francis had hidden assets or income were meritorious.

The bankruptcy court and Schory's counsel thoroughly questioned Francis with respect to his income and expenses. The only assets that Schory was able to show Francis failed to list in his schedules were a 1978 work van with 198,000 miles, valued at approximately $500, and tools purchased at a garage sale four and a half years ago that Francis uses in his painting business.

All questions regarding discrepancies in Francis's deposition testimony, trial testimony and schedules regarding Francis's income were adequately explained as differences between gross and net income from his painting business and by the fact that some figures were estimates. The bankruptcy court was satisfied with Francis's testimony clarifying the income and asset issues.

The bankruptcy court in the case before the Panel determined that Francis "has virtually no assets." (App. of Appellant at 253.) The only asset Francis has is his interest in his half of the duplex he shares with his mother. The mortgage liens on the duplex are superior to Schory's lien and a sale of Francis's half interest will not leave any funds available for Schory. (App. of Appellant at 191-92, 253.)

In its oral decision, the bankruptcy court determined that Francis is contributing all of his disposable income into his plan for the maximum period of five years. In addition, Francis's relatives have agreed to make a $15,000 lump sum contribution to the plan upon confirmation.

---

[4]Section 1325(a)(4) looks at what a creditor will be "paid" in a chapter 7, not what it is entitled to be paid. *See* 11 U.S.C. § 1325(a)(4) ("the value of . . . property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be *paid* on such claim if the estate of the debtor were liquidated under chapter 7") (emphasis added).

It is important to note that the bankruptcy court was convinced that a thorough search of the Debtor's assets and income had been performed by the numerous investigations conducted by Schory. In its oral decision the bankruptcy court states "I think, actually, the thoroughness with which [Schory's counsel] went over this is one of the things that made it possible for [Debtor's] plan to be confirmed, because I became convinced that [Debtor's] life had been combed through." (App. of Appellant at 255.)

Further, the Bankruptcy Code specifically allows a debtor who otherwise meets the requirements of § 1325 to discharge certain debts that are not dischargeable in a chapter 7. Schory's debt was found nondischargeable under 11 U.S.C. § 523(a)(2)(A). *Francis*, 226 B.R. 385. Unfortunately for Schory, his claim is not in one of the classes of debt which Congress chose to except from the superdischarge granted to chapter 13 debtors. *See* 11 U.S.C. § 1328(a). To be entitled to the benefit of the superdischarge, the debtor subjects himself to at least three years of plan payments consisting of all of his disposable income. Francis's plan exceeds the minimum requirements by paying into the plan all of his disposable income for a period of five years plus voluntarily obtaining a loan from his relatives for an additional $15,000 which represents a significant fund not otherwise available to the creditors.

We do not find clearly erroneous the bankruptcy court's determination that the low percentage proposed by Francis's plan and the fact that Francis was attempting to discharge Schory's debt that was nondischargeable in a chapter 7 were not, in this case, evidence of bad faith.

Additional Issues Asserted by Schory as Evidence of Bad Faith

In further examining whether Francis's plan was filed in good faith, the bankruptcy court addressed each of Francis's actions that Schory asserted were evidence of bad faith.

The bankruptcy court specifically questioned the Debtor with respect to his failure to file his tax returns and failure to list the Internal Revenue Service as a creditor in his schedules. Francis testified that the failure to list the debt was inadvertent because he had specifically discussed the IRS issues with his attorney. Francis further testified that the failure to file the tax returns was due to a combination of events in his life. During that time period he was in litigation with Schory, his business was failing, his father died from cancer and his mother's failing health resulted in her becoming an invalid. Debtor currently uses

the services of an accountant to properly file his quarterly returns and annual tax returns. Francis was able to describe in detail to the bankruptcy court the services provided by his accountant and what Debtor's duties were to make it possible for the accountant to perform his job. Thus, future problems with unfiled taxes should be alleviated.

Failure to disclose the prior chapter 7 was inadvertent. The Debtor testified that he and his counsel had discussed the prior filing and when questioned by the bankruptcy court, Debtor's counsel stated that he "honestly missed it myself." (App. of Appellant at 158.)

Cases where the courts have refused to confirm a chapter 13 plan that included a pre-petition debt that was or would be nondischargeable in a chapter 7 proceeding are distinguishable from the case at bar and generally include more egregious conduct by the debtors after the debt was incurred. *See Caldwell II*, 895 F.2d 1123 (no attempt at repayment prior to filing bankruptcy; immediate conversion of chapter 7 to chapter 13 after finding of nondischargeability in chapter 7; failure to disclose assets including tax refunds and $6,300 IRA; transfer of assets to relatives; length of plan was only 36 months; no payments made on the debt except three made on threat of garnishment); *Pioneer Bank of Longmont v. Rasmussen (In re Rasmussen)*, 888 F.2d 703 (10th Cir. 1989) (debtor did not originally meet debt limitations requirements of chapter 13 and filed chapter 7; debt to creditor bank was found nondischargeable in chapter 7 under § 523(a)(2); debtor filed chapter 13 just two weeks after conclusion of chapter 7; creditor's nondischargeable debt was only debt listed in chapter 13; plan proposed to pay 1.5% of debt; plan was for minimum 36-month period and proposed monthly payments of $50; court found confirmation is tantamount to discharge of creditor's nondischargeable debt); *Davis v. Mather (In re Davis)*, 239 B.R. 573 (B.A.P. 10th Cir. 1999) (debtor did not originally meet debt limitations of chapter 13 and filed chapter 7; chapter 13 was filed after discharge, but before prior chapter 7 was closed; debtor proposed payment of .4% to unsecured creditor whose debt was found to be nondischargeable in prior chapter 7; debtor proposed to surrender to creditor nonexempt property that remained an asset of his chapter 7 estate); *In re Rose*, 101 B.R. 934 (Bankr. S.D. Ohio 1989) (dishonest nature of debtor's pre-petition conduct resulting in restitution agreement; no voluntary payments after probation period despite substantial $75,000 salary in 1987 and ability to pay; failure to commit all

disposable income to plan, particularly $4,500 to $5,000 anticipated quarterly commission income).

After Schory was awarded a judgment in state court, Francis did not immediately file bankruptcy as seen in several of the above cases. Francis did not file the chapter 13 petition and plan immediately on the heels of his chapter 7; instead, using funds received from the sale of condos, Francis made significant voluntary payments on the judgment. After numerous investigations, Schory was unable to show that Francis had hidden assets or income or misstated his current income for purposes of making minimal plan payments. The length of Francis's plan is the maximum permitted by the Bankruptcy Code. All of Francis's disposable income is committed to payment into the plan for the five-year period, and Francis will never be able to pay off the full amount of the debt owed to Schory.

From the transcript, this dispute between the parties has festered for over 14 years. The bankruptcy court admonished Francis that this was his last chance to put his life back together. Similarly,

> [Creditor] should be advised, . . . that a debtor who has sought the protections of bankruptcy, and who meets the obligations of [11 U.S.C.] § 1325(a) for confirmation of a plan over the maximum term permitted by law, need not be turned away and forced to sell apples on the streets in every case in order to satisfy an impossibly large unsecured obligation, however egregious may have been the conduct which gave rise to the obligation.
>
> Debtor proposes to obligate himself to making Chapter 13 plan payments for the maximum period permitted by law, in an amount equal to his total projected disposable income, based as it must be upon debtor's current level of income and reasonably necessary expenses. While this is undoubtedly not enough for [Creditor], who apparently would not be satisfied with less than the infliction of constant pain and suffering on debtor forever, it is all that the legitimate policies of bankruptcy can, or should, demand in the circumstances presented here.

*In re Young*, 237 F.3d at 1171-72 (quoting *In re Young*, No. BK-97-13747-LN, at 6-7 (Bankr. W.D. Okla. Apr. 28, 1998)).

> The policy of allowing a fresh start does not license debtors to lightly rid themselves of the burden of their indebtedness without an honest attempt at repayment. Yet neither does that policy compel debtors, in Dickensian fashion, to labor for the rest of their lives under the crushing weight of gigantic debt; under our law, the world is not to be made a debtor's prison by a lifelong sentence of penury. While we appreciate [Creditor's] frustration at [Debtor's] inability to repay the whole of his debt, the fact remains that

[Debtor] filed a Chapter 13 plan with the bankruptcy court, arranging therein to devote all of his disposable income to the repayment of his various debts, including his debt to [Creditor], for the maximum five-year period allowed by law. As discussed above, the bankruptcy court found [Debtor's] plan to have been filed in good faith, and we discern no clear error in that determination.

*Young*, 237 F.3d at 1178.

## CONCLUSION

"There was ample evidence in the record to sustain each of the court's detailed factual findings. Debtor explained each inconsistency . . . . The bankruptcy court [apparently] judged his testimony to be credible. It is not the function of an appellate court to substitute its judgment of the credibility of a witness for that of the trial court." *Tri-County Credit Union v. Leuang (In re Leuang)*, 211 B.R. 908, 909 (B.A.P. 8th Cir. 1997); *see also In re Dow Corning Corp.*, 215 B.R. 526, 528 (Bankr. E.D. Mich. 1997) (appellate court cannot substitute its own judgment for that of the trial court unless trial court has abused its discretion).

The dissent relies upon *Caldwell II's* instruction that "veiled Chapter 7 plans" should not be confirmed, but the underpinning of that instruction is that any chapter 13 plan that might be so construed must be given "particular scrutiny." *Caldwell II*, 895 F.2d at 1126. Scrutiny is the trial judge's role, and the bankruptcy judge performed "particular scrutiny" in this case. The dissent disagrees with the result, but our role is to assure that the trial judge did in fact give the circumstances "particular scrutiny." Under our view of this Circuit's authority, we cannot find the bankruptcy court's factual determinations clearly erroneous. The decision of the bankruptcy court is **AFFIRMED**.

STEVEN W. RHODES, Chief Bankruptcy Appellate Panel Judge, dissenting. I agree with the majority that in coming to a conclusion on the good faith issue, the bankruptcy court performed a thorough review of the totality of the circumstances, as required by applicable Sixth Circuit precedent.[1] I also agree that there was no clear error in the bankruptcy court's findings regarding either the best efforts requirement of 11 U.S.C. § 1325(b)(1)(B) or the liquidation test of 11 U.S.C. § 1325(a)(4). Finally, although the debtor's explanations of the discrepancies in his bankruptcy papers strain credibility, I cannot conclude that the bankruptcy court's acceptance of those explanations was clearly erroneous.

I must dissent from the panel's decision, however, because the bankruptcy court's finding that this plan was proposed in good faith is inconsistent with *Hardin v. Caldwell* (*In re Caldwell*), 895 F.2d 1123 (6th Cir. 1990), and is clearly erroneous.

In *Caldwell*, the court of appeals stated, "Courts should not approve Chapter 13 plans which are nothing more than 'veiled' Chapter 7 plans." *Id.* at 1126. In Francis's first bankruptcy case, filed under chapter 7, he proposed to discharge 100% of Schory's theft claim. That was denied. In this bankruptcy case, filed under chapter 13, Francis proposes to discharge 97-98% of the same claim. This, too, should be denied. It is precisely such a chapter 13 plan that the *Caldwell* court instructs should not be approved because it is a veiled chapter 7 plan. *Caldwell* implicitly recognizes that there is simply no rational basis, even in the context of the "totality of the circumstances" test, to conclude that Congress intended bankruptcy courts to deny a discharge to 100% of a theft claim in a chapter 7 case but to grant a discharge to 97-98% of the same claim in a chapter 13 case.

The debt is not dischargeable in chapter 7 because Francis stole $370,000 from Schory, his business partner. *Ed Schory & Sons, Inc. v. Francis* (*In re Francis*), 226 B.R. 385 (B.A.P. 6th Cir. 1998). Of course, this factor, by itself, is not sufficient to find bad faith in a chapter 13 case. As the *Caldwell* court stated, "Although we consider as a factor what

---

[1]The record in the court below does not reflect that the bankruptcy court was aware of the precise percentage dividend that the debtor's plan proposes to pay to Schory. This important information is not in the plan and there was no testimony on the point. At the oral argument on this appeal, the panel asked counsel to stipulate to the dividend and they agreed that it is about 2-3%. Nevertheless, the record reflects clearly enough that the bankruptcy court was aware that the plan proposed a very minimal dividend to Schory.

[the debtor] did to incur the judgment, it is what he has done since the judgment to avoid paying it that is most important." *Id.* at 1127.

What Francis has done to avoid repaying Schory is well documented in the records of Francis's two bankruptcy cases. These records establish that Francis has successfully delayed Schory for over ten years by litigating his claims and defenses in seven courts. It was only when he ran out of litigation options that he finally paid a small portion of the debt and then filed this chapter 13 case. This history firmly establishes Francis's bad faith in dealing with Schory over the years and now.

The history begins with Francis's immediate default on the $130,000 settlement reached after Schory sued. When Schory commenced foreclosure on the property securing the settlement, the parties settled again and attached to their settlement papers a letter of admission and apology that Schory had obtained from Francis. In that letter, Francis apologized for stealing the money, for filing counterclaims and for calling the police. Francis almost immediately defaulted again, so Schory commenced foreclosure again. Francis responded with a counterclaim alleging both coercion in signing the letter of apology and defamation because Schory had shown the letter to others. The state court trial judge dismissed the counterclaims, but Francis appealed to the Ohio Court of Appeals, which affirmed. Francis then appealed to the Ohio Supreme Court, which likewise affirmed. *Ed Schory & Sons, Inc. v. Society Nat'l Bank*, 662 N.E.2d 1074 (Ohio 1996). By then, five years had elapsed since the initial settlement and Francis had repaid little, if any, of the money that he stole.

After this unsuccessful litigation, in 1997, Francis's next tactic was to seek a discharge of the debt in a chapter 7 bankruptcy case. That was equally unsuccessful, as the bankruptcy court concluded that the debt was nondischargeable and that judgment was affirmed by the bankruptcy appellate panel on November 10, 1998. *Ed Schory & Sons, Inc. v. Francis* (*In re Francis*), 226 B.R. 385 (B.A.P. 6th Cir. 1998).

At that point, Francis was left with few options. During the next two year period, through sales of real property assets and a levy on personal property, Francis paid Schory about $43,000. These were the first substantial payments on this nearly ten year old debt. Finally, Francis filed this chapter 13 case.

With this history, our evaluation of Francis's sincerity in this chapter 13 case is a straightforward matter. Clearly, Francis did not demonstrate a sincere desire to repay the

money he stole from Schory by litigating with him for ten years in seven courts. Likewise, Francis did not demonstrate a sincere desire to repay Schory when he filed a chapter 7 bankruptcy case seeking to discharge the debt. It is equally clear that Francis does not now demonstrate any greater sincerity in offering to pay Schory a 2-3% dividend over five years.

Comparing specific factors in prior cases addressing the good faith issue is difficult because so many factors must be considered. Nevertheless, it is important to note that the *Caldwell* court disapproved of a plan whose dividend (36.6%) was *more than twelve times* the dividend of Francis's plan. The panel majority's approval of this plan simply cannot be reconciled with *Caldwell*.

Both the bankruptcy court and the majority rely heavily on the fact that the plan meets the best efforts test. But *Caldwell* instructs that in this context, "[b]est efforts . . . , without more, are not enough." *Id.* Indeed this instruction is clear from the statute itself, which distinctly requires both good faith and best efforts.

Some courts do not distinguish between good faith and best efforts. For example, the decision that the majority quotes and heavily relies upon, *Mason v. Young* (*In re Young*), 237 F.3d 1168 (10th Cir. 2001), plainly reaches the conclusion that the debtor's best effort is sufficient to establish good faith regardless of how egregious the debtor's initial conduct was. We, however, are bound by *Caldwell*.

Finally, the majority also relies heavily on the fresh start policies of the bankruptcy law, from which Francis certainly could benefit. But these well intentioned policies say little about whether any particular debtor is entitled to relief. Indeed, the Supreme Court has stated, "[A] debtor has no constitutional or 'fundamental' right to a discharge in bankruptcy." *Grogan v. Garner*, 498 U.S. 279, 286 (1991) (citing *United States v. Kras*, 409 U.S. 434, 445-446 (1973)). Moreover, our bankruptcy law "limits the opportunity for a completely unencumbered new beginning to the 'honest but unfortunate debtor.'" *Id*. at 286-87 (citing *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934)).

As the majority notes, Francis bears the burden of proving that this plan was proposed in good faith and we have an obligation to carefully scrutinize the circumstances bearing on the debtor's good fath. He has not met that burden and his claim of good faith cannot withstand that scrutiny. The adjectives "honest" and "unfortunate" simply do not apply to Francis.

Because I am left with the definite and firm conviction that the bankruptcy court's finding of good faith was a mistake, I respectfully dissent. I would reverse the confirmation order and remand with instructions to dismiss the bankruptcy case.